Salvatore **CAVALLARO** et al.

v.

**UNITED STATES** of America.

Civ. No. 15744.

United States District Court,
D. Connecticut.

May 30, 1973.

W. Paul Flynn, New Haven, Conn.,
Lucy V. Katz, Fairfield, Conn., Raymond
B. Rubens, Bridgeport, Conn., for peti-
tioners.

Barry J. Cutler, Asst. U. S. Atty.,
New Haven, Conn., for respondent.

MEMORANDUM OF DECISION

NEWMAN, District Judge.

This is a motion under 28 U.S.C. §
2255 by three defendants, Cavallaro,
Pulver, and Staires, who were convicted
along with five co-defendants of partici-
pation in an interstate car theft opera-
tion in violation of 18 U.S.C. § 2312.
The claim of the three petitioners is
that their constitutional right to the ef-

fective assistance of counsel was abridged because of certain actions taken or not taken by their retained counsel, Warren Leudecker, Esq., who represented all nine defendants at the trial. (One defendant was granted a judgment of acquittal.) The details of the offense are set forth in the decision of the Court of Appeals affirming all convictions. United States v. Wisniewski, 478 F.2d 274 (2d Cir. 1973).

That decision also explored the claim, raised by Cavallaro, Pulver, and Staires, that they were entitled to reversal of their convictions because of an alleged conflict of interest arising out of Atty. Leudecker's joint representation. The Court of Appeals rejected their contentions, since all defendants, including the three petitioners here, had been carefully queried in court prior to trial as to whether they all wanted to be represented by Atty. Leudecker. Apparently, the Court of Appeals concluded that whatever infirmity might inhere in the fact of joint representation did not warrant reversal in view of the defendants' specific decision to be represented by one lawyer. In effect, defendants were held to have waived any complaint about the fact of joint representation.

The affirmance establishes only that the fact of joint representation does not vitiate the convictions. It leaves open the question of whether occurrences during the course of that joint representation were such as to deny any defendant the effective assistance of counsel. The Court of Appeals specifically noted that it was affirming "in the absence of objective evidence" to show a denial of constitutional right, evidence that could only be developed in a collateral proceeding such as this. 478 F.2d at 284. Therefore, a hearing was held on defendants' motion on May 16, 1973. Testimony was taken from the three petitioners, Atty. Leudecker, and the father of one petitioner.

Most of the facts are not in dispute. On the day of the arrest Leudecker was telephoned by defendant Wisniewski, or someone calling on his behalf. Leudecker went to Wisniewski's place of business, where the arrests occurred. Later that day he appeared on behalf of all defendants to arrange for release on bail. His representation of all defendants continued through the conclusion of the trial. His fee was paid by Wisniewski, and none of the other defendants paid him any fee. Apart from conversations with defendant Pulver, the principal occasion on which Atty. Leudecker conferred with his clients (other than Pulver and Wisniewski) was during a two-hour meeting in March of 1972 at Leudecker's office. All defendants except Wisniewski attended. Prior to that meeting, Leudecker had been advised of much of the government's evidence, and had also been told that the government would not, upon a plea of guilty by Wisniewski, dismiss charges against all of the other defendants, but that the government was prepared to recommend various dispositions for those defendants who pled guilty. At the two-hour meeting, Leudecker told the group the strengths of the government's case and expressed his personal view that all the defendants had guilty knowledge of what had been going on. He also told them what sentence the government would recommend for each of them upon a guilty plea.

According to Leudecker, the meeting produced a consensus that the best tactic for the defendants would be to put the government to its proof, with some prospect that proof of guilty knowledge could not be established. Leudecker discussed with the group different factors bearing upon whether or not they should testify, including the fact that the testimony of some might be detrimental to others. He advised the group not to testify.

Prior to and during the trial, Wisniewski had led the other defendants to believe that somehow he would accept the blame for the alleged offense and exonerate them. While Staires claims Leudecker heard Wisniewski say this to the group of defendants at trial, Leu-

decker denies hearing it, as does Pulver, who was seated near Wisniewski at counsel table. On this disputed point, I credit Leudecker's denial. Even if Leudecker did not know it, the fact remains that Wisniewski had misled the other defendants into believing that, somehow, he would present to the jury a version that exonerated them. They were understandably astonished when Leudecker informed the trial judge that there would be no defense testimony.[1] Just prior to informing the court, Leudecker asked each of the defendants individually at counsel table whether any wished to testify, and none elected to do so.

Each of the three petitioners claims that Leudecker's primary loyalty to Wisniewski (which Leudecker acknowledges) prevented him from rendering effective assistance of counsel to them. The claim requires consideration of additional facts not common to each petitioner's case. Pulver insistently sought out Leudecker to discuss his own defense. He met with Leudecker a dozen times. He emphasized to Leudecker that, unlike many of the other defendants, he was not employed by Wisniewski. He further contended that he was on the premises the day of the arrest only to buy auto parts and produced cancelled checks to corroborate his claim. He insisted he had no knowledge that stolen cars were being brought to Wisniewski's place of business for dismantling. Leudecker claims all of the defendants acknowledged to him and an associate that they had guilty knowledge. He did not specify when this was said or under what circumstances. At least with respect to Pulver, I decline to credit Leudecker's statement in this regard. Since Pulver was observed driving one of the stolen cars from one point on Wisniewski's premises to another point, Pulver's knowledge was of course critical to his case.

Prior to trial Leudecker told Pulver that it would not be "advisable" for him to testify. Pulver initially rejected this advice, for he asked Leudecker during the trial if he could take the stand. Leudecker replied that he was "working on it." When all defendants were asked by Leudecker at the close of the trial if they wished to testify, Pulver did not speak up because at that point he felt it was best to follow Leudecker's advice.

In Morgan v. United States, 396 F.2d 110 (2d Cir. 1968), the Court of Appeals remanded for hearing a claim under § 2255 to determine whether the defendant "received advice and assistance of counsel sufficient to afford him that quality of representation guaranteed by the Sixth Amendment." 396 F.2d at 111. The Court specifically identified as matters to be examined what advice the attorney gave the defendant about testifying and whether the defendant had a clear opportunity to decide whether to testify. 396 F.2d at 113.

■ Pulver did not receive the effective assistance of counsel with respect to the decisions not to present any defense testimony and not to testify. It is not the absence of defense testimony nor the fact that Pulver failed to testify that warrants this conclusion. The Sixth Amendment was violated in Pulver's case because, in view of all the circumstances known to the defense attorney, he could not impartially and effectively advise Pulver on whether to present defense testimony and whether to testify. Leudecker knew that Pulver was not employed by Wisniewski. He knew that Pulver was vigorously contending lack of guilty knowledge and had some evidence to corroborate his claim. He knew that Pulver wanted to testify yet he advised against it. It may be that a completely objective and impartial defense attorney in such circumstances would have shared Leudecker's view that neither Pulver nor anyone else should testify in his behalf. But Leudecker was not in a position to give Pulver effective advice on these critical subjects.

In some situations the fact that Pulver was asked at counsel table if he

---

[1] Of course, to the extent that defendants were misled by Wisniewski, there was no denial of protected rights.

wanted to testify and declined would foreclose further complaint. But in the circumstances of this case the advice of his attorney tainted the reality of a free choice on Pulver's part. Moreover, while no conclusion need be reached on this point, there is certainly some basis for believing that Leudecker's advice was not given out of undivided loyalty to Pulver. The evasive brush-off of Pulver's request to testify is disturbing. Some question also arises from Leudecker's acknowledgement that he advised Pulver to reject the government's offer of a suspended sentence upon a plea of guilty. The issue here is not whether Leudecker in fact acted improperly. But there is sufficient basis for doubting the impartiality and effectiveness of his representation of Pulver to warrant the conclusion that Pulver's rights were denied. It is unfortunate that the circumstances of this case cast suspicion on Leudecker's role, but that is a risk to which any attorney must expect to subject himself when he accepts a fee from a principal defendant and then agrees to represent all co-defendants at no extra charge.

■ The circumstances concerning Cavallaro and Staires do not establish that Leudecker's representation of them denied them effective assistance of counsel. There is no substantial basis for believing that they had a defense they wanted Leudecker to present. Both sat silently in his office when he informed the group that he believed they had guilty knowledge. Unlike Pulver, they did not seek Leudecker out to urge him to present evidence in their behalf. Cavallaro claimed he told Leudecker that he had done "nothing," but at the hearing on this motion he was extremely vague as to what he had said. Neither he nor Staires makes any claim that either ever wanted to testify. In the circumstances of their cases, Leudecker's advice to them not to testify and the decision, in which they unreservedly concurred, not to present a defense resulted in no denial of Sixth Amendment rights.

Accordingly, the motion of petitioner Pulver to set aside his sentence and conviction is granted, and he is ordered released from custody forthwith upon the terms of his pre-trial bail, pending the government's decision with respect to retrial. The motions of petitioners Cavallaro and Staires to set aside their sentences and convictions are denied.

This case presents one other matter that requires comment. Defendants' trial counsel acknowledges that from his discussions with the prosecutor he gained the understanding that upon a plea of guilty, not only would the prosecutor recommend a specific sentence for each defendant, but that each defendant would in fact receive the sentence recommended by the prosecutor. The government denies that its recommendation was to be understood as a commitment by the Court. In response to the Court's inquiry as to what defense counsel would have done at a guilty plea proceeding under Fed.R.Crim.P. 11, he bluntly conceded that he would have let his client deny that any promise or commitment had been made regarding a sentence even though he would have told his client that the prosecutor's recommendation should be understood to be a commitment.

■ There can be no justification for an attorney either actively advising or passively tolerating false responses by his client in the proffer of a guilty plea. Such conduct undermines the integrity of the proceeding. See Trotter v. United States, 359 F.2d 419 (2d Cir. 1966), and cases cited therein. Whatever may be the situation elsewhere, it is the practice in this District to put on the record at the time of a guilty plea the details of any understanding between the prosecuting and defense attorneys respecting the plea. Failure to do so should normally warrant disciplinary proceedings.

■ Furthermore, any attorney practicing at the bar of this Court should clearly understand that a sentence recommendation by an Assistant United States Attorney is only a recommendation and not in any sense a commitment as to what the sentence of the Court will be. Normally the prosecution makes no sentence recommendation whatever. On

infrequent occasions three techniques have been employed:

(1) The prosecutor makes a sentence recommendation, either of a specific term or a general plea for severity or leniency. If the prosecutor has in any way contributed to the defendant's willingness to plead guilty by assuring that a favorable recommendation will be made, that fact is disclosed on the record when the plea is made. The plea stands, whether or not the recommendation is followed by the Court.

(2) The prosecutor urges the Court to permit the defendant to plead guilty under an arrangement whereby the prosecutor will recommend that the sentence should not exceed a stated maximum, with leave to the defendant to withdraw his plea if advised by the Court, prior to sentencing, that the Court intends to sentence above the maximum recommended by the prosecutor. If the Court accepts a guilty plea under this arrangement, the arrangement is fully disclosed on the record at the time of plea. If the Court, after reviewing the presentence report, imposes a sentence at or less than the prosecutor's recommendation, the guilty plea stands. If the Court decides to impose a higher sentence, the guilty plea is withdrawn, and any subsequent guilty plea is entered without benefit of a recommended maximum. Some judges in this District have accepted guilty pleas under this arrangement, while others have declined to do so.

(3) On extremely rare instances, the prosecutor, defense counsel, and the trial judge discuss and agree upon a specific sentence in advance of a guilty plea. This sentence bargain is fully disclosed on the record at the time of the plea. Only in such circumstances is there a commitment that a specific sentence will be imposed.

Any defense counsel who remains in any doubt about sentence procedures in this Court should make appropriate inquiry before representing any client in a criminal case.