Alphonso MORGAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 103, Docket 31343.

United States Court of Appeals
Second Circuit.

Argued Oct. 10, 1967.

Decided May 21, 1968.

Joseph M. Shortall, New Haven, Conn., for appellant.

David A. Golas, Asst. U. S. Atty., Hartford, Conn. (Jon O. Newman, U. S. Atty., Hartford, Conn., on the brief), for appellee.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

■ Alphonso Morgan's appeal from the denial of his third motion under 28 U.S.C. § 2255 to vacate his sentence of four years [1] for causing women to be transported in interstate commerce for immoral purposes and conspiracy with others so to do, 18 U.S.C. §§ 2421, 371, turns on whether he was deprived of effective assistance of counsel because of a conflict of interest on the part of his court-appointed counsel who also represented a co-defendant Harry Stein, as Stein's retained counsel.[2]

■ As the possible defenses of Stein and Morgan on the facts before us raise a question as to whether there was such a conflict of interest, we remand the case to the district court for a hearing regarding the conduct of Morgan's defense, to determine whether Morgan received advice and assistance of counsel sufficient to afford him that quality of representation guaranteed by the Sixth Amendment.

On October 29, 1962 a stag party was held at the Blue Rail, Inc., a licensed barroom and grill, in Portchester, New York, which Stein owned and operated. Morgan, Stein and their co-defendant, Gerald Gerardi, were all present at this stag party. The party was also attended by two women from Bridgeport, Connecticut, Maureen Emmanuel and Juanita Days, who performed lewd and lascivious acts in the nude and engaged in acts of prostitution. It was not disputed that Stein and Morgan had discussed having some girls perform a strip-tease at the party, that thereafter Morgan, who also lived in Bridgeport, had spoken to Emmanuel, and that Emmanuel had gone to the Blue Rail several days before the party and had talked with Stein. There are some differences in the testimony as to precisely what was

1. Morgan served sixteen months of his sentence and was on parole until January 5, 1968. While appellant's release from custody renders his § 2255 application moot—Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960); United States v. Bradford, 194 F.2d 197 (2d Cir.), cert. denied, 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1371 (1952)—the petition may be treated as a writ of error coram nobis, United States v. Garguilo, 324 F.2d 795 (2d Cir. 1965), which is available even after release from custody, United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed.2d 248 (1954). While we indicated in United States v. Garguilo, supra, that the standards for granting coram nobis relief are more stringent than those for granting relief under § 2255, we believe that in the present case justice requires the application of the same standards that would be applied to a § 2255 application, since at the time this appeal was heard the appellant had not yet been released from custody.

2. Stein and the third co-defendant, Gerald Gerardi, were convicted of the same violations as Morgan and were sentenced respectively to terms of three years and five years.

said in these conversations with regard to getting girls for the party, by whom these things were said, and whether Emmanuel came to the party by arrangement with Stein or on her own initiative.

With this brief background of the factual issues in mind we resume the chronology of events. The Portchester police visited the premises the night of the party; they then advised the FBI and gave them names of persons who were present. A complaint charging violation of the Mann Act, 18 U.S.C. § 2421, was filed and on November 7, 1962 Morgan was arrested. After being advised of his constitutional rights and after speaking to an attorney, one Hirsh of Peekskill, New York, Morgan made an oral statement and then signed a written statement which was introduced in evidence at trial.[3]

In his statement Morgan admitted talking to Stein in Portchester on October 22. According to Morgan, Stein said that he and Gerardi were going to run a party and asked if Morgan knew some girls to put on a show. Morgan spoke to Emmanuel in Bridgeport, told her that Stein was looking for some "pretty girls" to work in Portchester, and gave her Stein's telephone number. Morgan saw the girls at the party and he bought them drinks, but he had nothing to do with them after they removed their clothes. He did not give them money or transport them to Portchester or back to Connecticut. He never received any money from the girls or from Stein; he did not buy a ticket to the party.

The grand jury returned an indictment on November 19, 1962 against Stein, Morgan and Gerardi, charging violations of the Mann Act and conspiracy. On November 26 appearances were filed by attorneys for all three defendants; Robert S. Friedman for Morgan, Carl Turk for Stein, and Robert R. Goldberger for Gerardi. Thereafter on January 8, 1963, Friedman was allowed to withdraw as counsel for Morgan; just why the court permitted Morgan to be left without counsel on the eve of the trial is not clear from the record. On the day set for trial, February 5, 1963, Morgan was therefore in court without counsel; Judge Timbers appointed Stein's attorney, Carl Turk, to represent Morgan and the trial commenced that same day. There was no objection by Turk or Morgan to Turk's appointment to represent Morgan and there was no request for an adjournment of the trial. It appears that Turk, as Stein's counsel, was already familiar with the case and had talked with Morgan prior to his appointment as Morgan's counsel on February 5.

Again, it is unclear from the record why the court appointed Stein's attorney to represent Morgan. It may have been that, under the circumstances, the parties thought that it was the desirable procedure to have Turk represent both Morgan and Stein and that Morgan knowingly accepted whatever risks were involved in having both defenses presented by the same attorney. On the other hand, it appears, from a colloquy occurring later in the trial (R. 869–871), that the court had been misinformed and was under the impression that Turk was representing both Stein and Morgan in other proceedings; the court may have been acting on that supposition in appointing Turk to represent Morgan at the trial. Of course on remand the court should consider what the situation was at the time of Turk's appointment as Morgan's attorney, what the reasons were for making that appointment, and why those concerned made no objection.

As we have concluded that the district court must inquire fully into all the circumstances of Turk's representation of Morgan, a summary of the evidence at trial is unnecessary. Suffice it to point

---

3. Morgan's attorney objected to the introduction of the statement on the grounds that it had been obtained during an unreasonable delay in arraignment and that it was the fruit of an illegal search. After a voir dire, Judge Timbers ruled against the defendant on these issues and also found that the statement was voluntary.

out that the government—through Morgan's statement to the FBI and the testimony of Emmanuel, Days, and several of the men present at the party—established that Morgan had put Emmanuel in contact with Stein, that Stein and Gerardi agreed to hire Emmanuel and another girl for the party, and that Emmanuel and Days drove from Connecticut to the party in Portchester where they performed numerous immoral acts.

Turk cross-examined the government witnesses on behalf of Stein and Morgan, and introduced a statement by Emmanuel tending to exculpate Morgan. He objected to the introduction of Morgan's statement to the FBI.

Stein took the stand in his own defense. He testified that Morgan had first suggested having some girls do a strip-tease at the party. He said that he never engaged Emmanuel to perform at the Blue Rail, that when Emmanuel, who is a negro, visited him a few days before the party he told her he was only interested in hiring white girls, and that when she and another negro girl arrived at the party he said he could not use them; he asked the girls to leave the party, but the guests objected and so he let them stay. Stein denied making any payments to Emmanuel or Days and said that he did not know where the girls came from or that they were prostitutes.

Stein was cross-examined by the prosecutor, on behalf of the government, and by Goldberger, on behalf of co-defendant Gerardi; he was not cross-examined on behalf of Morgan.

Morgan's petition alleges that Stein's testimony tended to exculpate Stein by pointing the finger of guilt at Morgan— as it indicated that the idea originated with Morgan and that only Morgan knew where the girls were from—and that there was therefore a conflict of interest with regard to cross-examining Stein on Morgan's behalf. Morgan also claims that there was a conflict of interest with respect to whether he should testify in his own behalf. His petition states that "Morgan did not take the stand though he avers that he desired to do

so" and that had he testified "he would have denied any knowledge of intent to induce anyone to participate in immoral activities, would have denied that he initiated a conversation with Stein concerning having a strip show at the party, would have denied participation in any immoral plan, and would have said that, if such a plan was formulated, it was without his participation or knowledge. This testimony would have conflicted with Stein's and would have tended to designate Stein as the initiator of any such plan."

Morgan does not state what advice Turk gave him with respect to whether he should take the stand and whether or not Turk made it clear to him that this was a choice for Morgan to make.

■ In his petition, filed in this third § 2255 proceeding, Morgan also claims that he was not adequately represented because Turk was not given sufficient time to consult with Morgan and prepare his defense; Morgan also contends—on grounds of illegal arrest, unnecessary delay between arrest and arraignment and illegal search and seizure—that his statement to the FBI was improperly admitted in evidence. We have previously examined all of these contentions, except that having to do with insufficient time to consult counsel and prepare a defense, upon direct review of the convictions, United States v. Stein, 2 Cir., 327 F.2d 657 (1964), and have found them to be without merit; nevertheless, to the extent that any conduct of Mr. Turk in connection with these matters may shed light on the quality of his representation of Morgan, the district court should be free to inquire into these matters again. Turk represented both Morgan and Stein on appeal from the convictions, and Morgan has not had separate independent counsel to raise these questions for him until this third application was filed. Therefore we think he should not be precluded from calling to the court's attention any phases of these other matters which bear upon the central question of the quality of his representation and the

possibility of any conflict of interest between him and Stein.

■ This case makes it abundantly clear that district courts should exercise extreme care before the court assigns any counsel already representing a defendant to represent one or more other defendants who face the same charges. Despite what the appearances may be before trial, the possibility of a conflict of interest between two defendants is almost always present to some degree even if it be only in such a minor matter as the manner in which their defense is presented. This is so especially where there is a question as to whether either or both of the defendants should take the stand. This kind of decision, difficult enough where two defendants at the same trial are represented by different counsel, is made doubly difficult where they are represented by the same counsel. The decision whether a defendant should testify may be unduly affected by the risk that his testimony may develop so as to disclose matters which are harmful to the other defendant or which conflict with the other defendant's story. The attorney's freedom to cross-examine one defendant on behalf of another will be restricted where the attorney represents both defendants. And if, where two defendants are represented by the same attorney, one defendant elects to take the stand and the other chooses not to, the possible prejudice in the eyes of the jury to the defendant who does not take the stand is almost inescapable.

As the Criminal Justice Act, 18 U.S.C. § 3006A now gives the court the means to assign counsel, who receives at least a nominal compensation, there is little reason not to appoint separate counsel for defendants where there is any possibility of a conflict of interest, except for those cases where with full knowledge of the facts the defendants themselves request to be represented by the same counsel.

■ We do not suggest that prejudice must necessarily have resulted where counsel already representing one defendant was assigned to represent another co-defendant. Nor do we suggest that a trial judge may never appoint the same attorney to represent two or more defendants. For example, where on the very eve of trial or during the course of the trial a situation suddenly arises which leaves one defendant unrepresented, the trial judge should not be precluded from permitting that defendant to be represented by counsel for a co-defendant if counsel, with the consent of both defendants, agrees to do so and if the judge, after careful inquiry, is satisfied that no prejudice will result. Obviously, the trial judge, who is in a position to talk to the parties and to make such inquiry, both public and private, as may be necessary, should be given as free a hand as possible to deal with such situations. See, e. g., United States v. Bentvena, 2 Cir., 319 F.2d 916, 936–937, cert. denied Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). We do not attempt here to set forth any rules to govern all circumstances.

But we do take this occasion to emphasize that the assignment of counsel in multi-defendant cases should never be a routine matter and should never depend upon the counsel who are immediately available. Where the trial judge assigns the same attorney to represent two or more defendants, he should do so only after conducting the most careful inquiry, as to which a full record should be made, and after satisfying himself that no conflict of interest is likely to result and that the parties involved have no valid objection.

If, on remand, the district court finds that there was no conflict of interest in the presentation of Morgan's defense and Stein's defense by the same attorney or that any conflict was so minimal that it could not have affected the result, the judgment of conviction will stand. If, on the other hand, the district court finds that there was such conflict of interest as to prejudice Morgan in his defense against the charges, the conviction must be vacated and the case may be tried again. We are aware of the seeming waste of time and expense which

would be involved in the retrial of a defendant, at a time after he has served his sentence, on charges where the record provides such strong evidence of guilt. However, the effective assistance of counsel is so important and paramount a right for a defendant on trial for a serious crime that we are not entitled to assume, merely because there is such substantial support for the conviction, that the defendant was, in fact, adequately represented by counsel.

It may well be that a hearing in the district court will disclose that any doubts concerning the adequacy of Morgan's representation are groundless. However, on the record before us, we cannot determine whether Morgan received that quality of effective representation, free from conflicting loyalties and responsibilities, which is his right under the law.

Remanded for further proceedings not inconsistent with this opinion.