**UNITED STATES of America, Appellee,**

v.

**Richard Patrick CARRIGAN and Robert Edward White, Appellants.**

**Nos. 226, 227, Dockets 74–2056, 74–2057.**

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1976.

Decided Nov. 3, 1976.

Phylis S. Bamberger, William J. Gallagher, Legal Aid Society, New York City, for appellant Carrigan.

Thomas McGanney, New York City, for appellant White.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

These are appeals from judgments of conviction entered on July 22, 1974 in the Northern District of New York. The appellants Richard P. Carrigan and Robert E. White were indicted on March 13, 1974 on one count of wilfully, knowingly and unlawfully transporting stolen goods in interstate commerce from Gloversville, New York to Haverhill, Massachusetts in violation of Title 18 U.S.C. §§ 2314 and 2. The stolen property consisted of raw and treated cowhides, goat skins, suede leather skins and ladies cowhide coats, valued at approximately $37,475. After a three-day jury trial before the Hon. Lloyd F. MacMahon, sitting by designation, both defendants were found guilty as charged on June 17, 1974. On July 19 Judge MacMahon sentenced each defendant to eight years imprisonment and each has been imprisoned since January 1975. Both defendants were represented by the same trial attorney who was jointly retained.

The Government's case below was established by eight witnesses and some eleven exhibits. The proof disclosed that White and Carrigan contacted one Joel Greenberg to find a purchaser for leather goods. They also obtained the services of Richard Ragone and Gene Southwick to burglarize the warehouse of M. Frenville Company at Gloversville, New York. Ragone rented a truck in New York with money supplied by the defendants. On the night of March 7, 1974 White and Carrigan who had borrowed a car, led Ragone and Southwick in a U-Haul truck to the Frenville warehouse where the latter two committed the burglary. After the stolen goods were loaded into the truck, Carrigan and White led the way into Massachusetts, and Southwick and Ragone followed in the truck. White and

Paul V. French, Asst. U. S. Atty., Albany, N. Y., James M. Sullivan, U. S. Atty., N.D. N.Y., Syracuse, N. Y., for appellee.

Carrigan prearranged a meeting with Greenberg in Haverhill, Massachusetts the next day, and he brought them to the warehouse of Theodore Zikos, a leather jobber, who purchased the stolen goods, making a down payment of $5,000 by check. White and Carrigan took $4,000 of this money for themselves and paid Ragone and Southwick $1,000.

Greenberg, Ragone, Southwick and Zikos all testified for the Government. Greenberg identified White and Carrigan in court as the men who had previously arranged for the sale of the goods at a meeting at the Marriott Inn in Boston, Massachusetts, three weeks before the burglary. He also testified that he had met them on March 8, 1974 in Haverhill, Massachusetts. Greenberg testified that he had unloaded the leather goods with White at the Zikos warehouse. Zikos testified that he had purchased the goods, made the down payment and saw White in the truck with Greenberg. Both Ragone and Southwick testified that they had burglarized the warehouse at the direction of Carrigan and White.

An FBI agent testified that he had interviewed the defendant White who made the statement that he was in New York on March 7 and 8 and had not left the state; further, the agent related that White claimed to have spent the evening of March 8 at Carrigan's apartment with Carrigan, Carrigan's wife, and the people next door. Carrigan testified at the trial that he and White had been in Massachusetts on those dates, had been in contact with both Greenberg and Zikos and had arranged the sale but denied that they knew the leather had been stolen and claimed they were only participating as a favor to Ragone. White did not take the stand.

Although other questions are raised, the crucial issue on this appeal is the fact that both Carrigan and White were represented on trial by the same attorney. The Government admits, moreover, that the court did not make any inquiry either of White or Carrigan or their counsel as to whether the defendants would be prejudiced by being represented by the same attorney. Both appellants now urge that their representation by one attorney produced a conflict of interest which violated their Six Amendment right to counsel.

The law in this Circuit is clear. When a potential conflict of interest arises, either where a court has assigned the same counsel to represent several defendants or where the same counsel has been retained by co-defendants in a criminal case, the proper course of action for the trial judge is to conduct a hearing to determine whether a conflict exists to the degree that a defendant may be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the Sixth Amendment. The defendant should be fully advised by the trial court of the facts underlying the potential conflict and be given the opportunity to express his views. *United States v. Mari*, 526 F.2d 117, 119 (2d Cir. 1975); *United States v. DeBerry*, 487 F.2d 448, 453 (2d Cir. 1973); *United States v. Alberti*, 470 F.2d 878, 881 (2d Cir. 1972), cert. denied, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973).

The mere representation of two or more defendants by a single attorney does not automatically give rise to a constitutional deprivation of counsel. It is settled in this Circuit that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel. *United States v. Mari, supra*, 526 F.2d at 119; *United States v. Vowteras*, 500 F.2d 1210, 1211 (2d Cir.), cert. denied, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *United States v. Wisniewski*, 478 F.2d 274, 281 (2d Cir. 1973); *United States v. Lovano*, 420 F.2d 769, 773 (2d Cir.), cert. denied, 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970). In all of these cases the trial court had carefully inquired as to the possibility of prejudice and elicited the personal responses of the defendants involved. Here the record is barren of any inquiry by the court or any concern by the Government.

■ In *United States v. DeBerry, supra,* 487 F.2d at 453–54, we reversed the conviction of both defendants represented by the same retained counsel, finding the inquiry of the district court judge insufficient to establish lack of prejudice. We noted with approval the view of the First Circuit in *United States v. Foster,* 469 F.2d 1, 5 (1st Cir. 1972), that the lack of satisfactory judicial inquiry shifts the burden of proof on the question of prejudice to the Government. 487 F.2d at 453 n. 6.

■ Applying these principles here, we find no real alternative other than reversing both convictions and remanding for a new trial. Chief Judge Lumbard in *Morgan v. United States,* 396 F.2d 110, 114 (2d Cir. 1968), in pointing out the obligation of the court to make the inquiry as to possible prejudice, stated:

> This is so especially where there is a question as to whether either or both of the defendants should take the stand. This kind of decision, difficult enough where two defendants at the same trial are represented by different counsel, is made doubly difficult where they are represented by the same counsel. The decision whether a defendant should testify may be unduly affected by the risk that his testimony may develop so as to disclose matters which are harmful to the other defendant or which conflict with the other defendant's story. The attorney's freedom to cross-examine one defendant on behalf of another will be restricted where the attorney represents both defendants. And if, where two defendants are represented by the same attorney, one defendant elects to take the stand and the other chooses not to, the possible prejudice in the eyes of the jury to the defendant who does not take the stand is almost inescapable.

Here the defendant Carrigan alone took the stand and his testimony directly conflicted with White's statement to the FBI that he, White, had not left the Albany-Schenectady area of New York State on the evening of March 7 or on March 8, 1974, and had nothing to do with the burglary. Carrigan testified that although neither he nor White participated in the interstate transportation of the goods or knew them to be stolen, they had prearranged the sale and they did meet Ragone and Southwick in Massachusetts on March 7, to take delivery of the goods; further Carrigan stated that on March 8, they met with Greenberg and concluded the sale of the goods. He further testified that he and White had then flown back to Albany, New York. Allegheny Airline tickets issued in the names of the appellants for a flight from Boston to Albany on March 8, 1974 were introduced into evidence by the Government.

Defense counsel, in his summation, made no reference at all to White's statement that he was not implicated and was not present but instead emphasized Carrigan's willingness to testify as well as his version of their participation. Thus on summation he commented:

> . . . I think it is significant Mr. Carrigan got on the stand and he didn't say to you "We don't know anything with reference to this matter."

He later stated:

> Now as you all know there is no obligation on the part of the defendants to take the stand, so one did and one didn't, but I would say this to you, the fact that Mr. Carrigan did take the stand is significant.
>
> I think that what he had to tell us is significant.

Defense counsel also told the jury on his summation that they could infer from the evidence before them that Carrigan and White "were merely entrusted with unloading this load of leather, finding a buyer."

The prejudice to White is clear. The Government which has the burden of establishing lack of prejudice seeks to distinguish *United States v. DeBerry, supra,* where we reversed the convictions of both defendants, on the ground that there the defendant who took the stand incriminated his co-defendant while here Carrigan only attempted to minimize the participation of both defendants. Carrigan's testimony however directly contradicted White's statement to the FBI agent so that White's credibility was

definitely in issue and challenged by Carrigan. While Carrigan did not incriminate White, his testimony was totally inconsistent with White's statement which created a real conflict of interest. Since only Carrigan took the stand, the prejudice to White as we indicated in *Morgan* is inescapable.

The prejudice to Carrigan arising from this representation by the same counsel as his co-defendant White, although not as readily apparent, is nonetheless real and requires, in our view, a reversal of his conviction as well as White's. The Government urges that its case was so strong that independent counsel for each defendant could not have changed the outcome.

■ We cannot accept the proposition that the more potent the Government's case, the less compelling the criminal defendant's constitutional right to independent counsel. Defense counsel here was inevitably thrust in the role of representing two men who had conflicting versions of their participation in the crime charged. White said he wasn't there and had nothing to do with it. Carrigan said we both were there but had no criminal intent. Trial counsel could not possibly have given his full measure of professional devotion to clients presenting inconsistent defenses. Each was entitled to zealous and independent counsel.* While here counsel obviously slighted White and favored Carrigan, he could not fully exploit Carrigan's willingness to testify without further damaging White's credibility. We see no need to speculate as to how independent counsel could have more competently handled the defense of either defendant. The record discloses the sharp conflict in their positions which, in the nature of things, prejudiced each even if one was apparently less disadvantaged than the other. In *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the trial judge had assigned Glasser's counsel to represent a co-defendant despite being advised of the possibility that conflicting interests might arise which would impair counsel's usefulness to Glasser. On a finding that counsel's repre-

sentation of Glasser was less effective because of the appointment, the court held that Glasser had been denied his right to the effective assistance of counsel. Mr. Justice Murphy's observation at 315 U.S. 76, 62 S.Ct. 457 is particularly apt. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

The Government also urges that single trial counsel was retained by both Carrigan and White, that he was not assigned and that he had represented both men in previous criminal matters. We are told that we should not unduly interfere with the defendants' right to counsel of their own choosing. *United States v. Sheiner*, 410 F.2d 337, 342 (2d Cir.), cert. denied, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969). We agree. However, in *Sheiner* as in *Mari, supra*, and *Wisniewski, supra*, the record amply established that the defendant had been carefully alerted by the court to the potential conflict of interest with his co-defendant and that substantial consideration had been given to the question of separate representation. Here, as we have already indicated, there was no consideration at all given to the issue. The record discloses no discussion as to possible conflict initiated by the court, the Government or defense counsel. On this record we have no reason to believe that the choice of counsel here by either defendant was intelligently made with knowledge of any possible conflict.

Under all the circumstances set forth we reverse the judgments of conviction below and remand for new trials. The district court is instructed to see that the defendants are forthwith represented by separate counsel.

LUMBARD, Circuit Judge (concurring):

The real prejudice to both defendants from their being represented by the same attorney at trial, as fully appears from Judge Mulligan's opinion, leaves us no choice but to reverse their convictions so

* Judd, Conflicts of Interest—A Trial Judge's Notes, 44 Fordham L.Rev. 1097, 1099 (1976).

that, upon retrial, they may have separate counsel, and thus enjoy the full benefit of their Sixth Amendment rights. Several recent opinions of our court have focused on the problems created by one attorney representing more than one defendant in a criminal prosecution. It has become increasingly clear that the only way to ensure adequate representation for each defendant in a multi-defendant case is the initiative of the court to require separate counsel as soon as the court is aware of such a situation. The adoption of a rule by each district court, or by action of the court of appeals for the circuit, would solve the problem. However, until such a solution is agreed upon, we must examine the circumstances of each situation, with the result that additional judicial resources may be expended on a retrial of the defendants affected. As Judge Oakes in his concurring opinion in *United States v. Mari*, 526 F.2d 117, 119 (2d Cir. 1975) has given a full and fair account of the reasons why each defendant should have separate counsel at most stages of a criminal proceeding, I add only a few further observations.

It would be a rare defendant who could intelligently decide whether his interests will be properly served by counsel who also represents another defendant. However parallel his interests may seem to be with those of a co-defendant the course of events in the prosecution of the case, the taking of a guilty plea, or the conduct of the trial may radically change the situation so as to impair the ability of counsel to represent the defendant most effectively. Even defense counsel, who all too frequently are not adequately informed regarding the evidence available against their clients, may not be in a position to judge whether a conflict of interest between their clients may develop.

It is a rare defendant in a criminal case who fully advises his own counsel of all he knows about the charges against him. Accordingly, most counsel must operate somewhat in the dark and feel their way uncertainly to an understanding of what their clients may be called upon to meet upon a trial. Consequently, counsel are frequently unable to foresee developments which may require changes in strategy.

It follows that there will be cases where the court should require separate counsel to represent certain defendants despite the expressed wishes of such defendants. Indeed, failure of the trial court to require separate representation may, in cases such as this, require a new trial, even though the defendants have expressed a desire to continue with the same counsel. The right to effective representation by counsel whose loyalty is undivided is so paramount in the proper administration of criminal justice that it must in some cases take precedence over all other considerations, including the expressed preference of the defendants concerned and their attorney.

Our burgeoning criminal calendars and the need to try a larger percentage of criminal cases under the provisions of the Speedy Trial Act and court rules for the prompt disposition of criminal cases have made it all the more necessary for our federal trial courts to take all measures to avoid the necessity for the retrial of multi-defendant cases. One such measure is to require separate counsel for each defendant in a multi-defendant case.