**Vincent YANNI, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**No. 77 Civ. 2264.**

United States District Court,
S. D. New York.

Nov. 29, 1977.

Vincent Yanni, pro se.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for United States of America; Angus C. MacBeth, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is the second motion made by petitioner Vincent Yanni pursuant to 28 U.S.C., section 2255, to vacate his judgment of conviction which was entered more than five years ago. He was convicted with others of conspiracy to distribute narcotics, which the Court of Appeals, in affirming the conviction, described as "a large scale narcotics ring from suburban New York and New Jersey which supplied dealers and distributors in Harlem."[1] He was sentenced by former Judge Harold R. Tyler, Jr. to a term of eight years.

His first motion, made four years after his conviction, was based upon the ground that because of a head injury sustained a decade before trial he was incompetent to stand trial. This Court found, in denying

---

1. *United States v. Manfredi*, 488 F.2d 588, 590 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

the application, that it was "wholly without merit." [2] The Court of Appeals affirmed without opinion on April 7, 1977. Within a month thereafter petitioner filed the instant motion. This time he seeks to vacate his conviction on the ground that he was unconstitutionally denied effective assistance of counsel based upon an alleged conflict of interest because his attorney also represented at the trial another defendant, Anthony Colangelo.

After a careful review of the record of over 3000 pages of minutes, from the suppression hearing through the conclusion of the trial, the Court finds that this motion, like the prior one, is without merit and that petitioner's allegations do not require a hearing.

Yanni was one of thirteen original defendants who were charged with membership in the conspiracy extending over a two-year period and involving transactions totalling millions of dollars. The government's proof established that petitioner and others, including one codefendant Colangelo, were distributors and relied upon Joseph LaCosa, a major figure in the conspiracy, for their supply of narcotics. Yanni and Colangelo were convicted primarily on the basis of wiretapped conversations that each separately had with LaCosa. In the instance of Yanni, there were five such intercepted calls; evidence was also offered that LaCosa was seen leaving Yanni's home with a box which the government contended contained cash received from Yanni for the purchase of heroin. In the instance of Colangelo, the proof against him was primarily one wiretapped call and one call placed by an undercover agent pretending to be a narcotics buyer. Neither defendant challenged the identification of his voice.

The government's case against Yanni in large measure rested upon the use of the word "shirts" in the wiretapped conversations, and as against Colangelo it was based upon the use of the word "pants" in his telephone conversation with LaCosa. The government contended that "shirts" was a code word for heroin and "pants" was a code word for cocaine. Neither defendant testified. The thrust of the defense advanced during the cross-examination of government witnesses and in summation was that the words were innocently used in their ordinary sense, whereas the government contended they described illicit transactions. Other than the fact that Yanni and Colangelo made separate telephone calls to LaCosa, who was the principal supplier of narcotics to distributors, no evidence in the entire case in any respect related petitioner and Colangelo.

Petitioner contends that he was denied a constitutionally adequate trial in that Judge Tyler failed to question the defendants concerning their joint representation by Lewis Alperin,[3] and that such an inquiry would have established that Yanni's interests were in conflict with those of his codefendant Colangelo. Yanni alleges that he was prejudiced by the joint representation as follows: that his counsel, Lewis Alperin, devoted more time to the defense of Colangelo; that he was dissuaded from taking the stand on his own behalf by Alperin because he, according to Yanni, feared that Yanni's "testimony may develop so as to disclose matters which would be harmful to [Colangelo]"; and that because he did not take the stand, he was "unable to present to the jury facts that would tend to exculpate him" or "his 15 year work record and other matters which would have enhanced his credibility . . . ."

The government asserts that Yanni in no respect was prejudiced by Alperin's representation of petitioner and Colangelo. It contends that the evidence demonstrated that the two defendants were involved in different aspects of the conspiracy, that their paths did not cross, and that no evi-

---

**2.** *Yanni v. United States,* 420 F.Supp. 990 (S.D. N.Y.1976).

**3.** Yanni also alleges that he was not informed of the joint representation until the day of the trial. This claim is contradicted by the minutes at the July 18, 1972 arraignment on a superseding indictment. At that time, one month prior to the trial, Alperin appeared as attorney for both Colangelo and Yanni, and the transcript indicates that both of his clients were present.

dence was presented at the trial to indicate that they acted together, that they knew one another, or that the participation of each in the conspiracy was such so that joint representation in the slightest degree could produce a conflict of interest. Moreover, the government emphasizes that before the trial it initially, and on its own, raised the issue of possible conflict before the Court, following which Alperin wrote to Judge Tyler, wherein he noted his joint role and stated:

> I have advised both of my clients that the United States Attorney has stated that there is a possibility of a conflict unless each defendant has a separate lawyer.[4] Both of my clients have stated that there is no possible connection between them and they know of no conflict. Therefore, they wish me to continue to represent both of them.

Alperin also has submitted an affidavit in the present proceeding wherein he swears that "At the time of writing the letter to Judge Tyler, I reviewed the situation with my clients, and we came to the conclusion that there was no conflict of interest. Up to and including the conclusion of the trial, no factors arose which changed my opinion."

Yanni challenges the veracity of Alperin's statements, alleging that counsel never consulted him concerning the issue of joint representation. He also submits codefendant Colangelo's affidavit that "at no time prior to the aforemention [sic] trial did I discuss the dangers of joint representation with Mr. Lewis Alperin." Because the Court finds no prejudice from the joint representation, it need not resolve this factual dispute. Moreover, it is significant that petitioner is silent as to what he would have testified to with respect to the basic testimony of his telephone conversations with LaCosa had he not been "dissuaded" from taking the stand, and how any such testimony would have been in conflict with the defense of Colangelo.

The rule in this Circuit is clear that for a court to vacate a conviction on the ground of joint representation, the petitioner must demonstrate "some specific instance of prejudice, some real conflict of interest, resulting from a joint representation." [5] As established by *United States v. Alberti*,[6] a trial court is required, when confronted with joint representation, to conduct a hearing to determine

> whether there exists a conflict of interest with regard to defendant's counsel such that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment. In addition, the trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given an opportunity to express his or her views.[7]

If no such inquiry occurred at the time of trial, the government bears the burden of proving no prejudice.[8] The government here has acknowledged and assumed that burden.

*Alberti* was decided subsequent to Yanni's conviction. However, this Court need not reach the question of whether *Alberti* should be applied retroactively, as petitioner would have it do. Even after *Alberti* and its progeny, it is still the rule that the

---

4. The Assistant United States Attorney made the statement referred to by counsel at a pretrial conference before Judge Tyler on June 7, 1972. The Court did not decide the issue at that time. Alperin's letter to the Court quoted in text was written one week after the Assistant brought the matter to the Court's attention.

5. *United States v. Carrigan*, 543 F.2d 1053, 1055 (2d Cir. 1976) (citing cases).

6. 470 F.2d 878, 881–82 (2d Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973).

7. *Id.* at 882. *See United States v. Carrigan*, 543 F.2d 1053, 1055 (2d Cir. 1976); *United States v. Mari*, 526 F.2d 117, 119 (2d Cir. 1975), *cert. denied*, 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *United States v. DeBerry*, 487 F.2d 448, 452 (2d Cir. 1973).

8. *United States v. Carrigan*, 543 F.2d 1053, 1056 (2d Cir. 1976).

defendant must have been prejudiced by the joint representation.[9] The Court finds that the government has demonstrated and the record reflects beyond peradventure that no prejudice occurred.

A major danger of joint representation arises when defense counsel is "inevitably thrust in the role of representing two men who had conflicting versions of their participation in the crime charged."[10] This is simply not the case here. The defendant's defenses were not inconsistent. Since the bases of the convictions were separate telephone conversations, defense counsel argued on behalf of each defendant that the references to "shirts" and "pants" were innocent statements concerning wearing apparel. Counsel also questioned the accuracy of the agents' testimony in regard to the telephone calls. Other than the fact that each made separate calls to LaCosa, no evidence in the case related petitioner to Colangelo in any respect. Nor did the calls of one relate to any transaction that the other was negotiating with LaCosa; each transaction was separate and independent. A careful review of the massive record indicates no evidence that linked the two defendants in any way, save for the fact that each separately dealt with LaCosa by telephone.[11] There is not the slightest basis for

petitioner's contention that the defense of one could have implicated the other. Indeed petitioner has not suggested any instance in which a potential conflict existed or could have arisen.

Yanni further alleges that his counsel persuaded him not to take the stand because of the likelihood that Yanni's testimony would have damaged Colangelo's defense. Yanni's only support for this allegation is a reference to the record which indicates that Alperin at one point told the Court: "I discussed it, to be frank, placing my client on the stand and I discussed the problems he would have . . . ."[12] Yanni claims that this comment demonstrates that he was dissuaded from taking the stand because of the effect that it would have on Colangelo's defense. This is a distortion of the record. The comment by Alperin was made during a suppression hearing prior to the trial when the Court was attempting to determine the impact of current pretrial publicity which referred to the murder of two nephews of a codefendant, one of whom was also a codefendant with petitioner. The discussion is set out in full in the margin.[13] It is clear from the context that Alperin was not referring to any difficulty that one defendant taking

---

9. *See United States v. Carrigan*, 543 F.2d 1053, 1055–56 (2d Cir. 1976); *United States v. Vowteras*, 500 F.2d 1210, 1211 (2d Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *United States v. DeBerry*, 487 F.2d 448, 452–53 (2d Cir. 1973).

10. *United States v. Carrigan*, 543 F.2d 1053, 1057 (2d Cir. 1976).

11. The government contends that the defendants were dealing in entirely separate aspects of the conspiracy: Yanni dealt in "shirts"—heroin—and Colangelo in "pants"—cocaine. This contention is not borne out by the record since evidence was presented by Agent Siegel's testimony that he called Colangelo and told him that he (Siegel) had "two shirts to deliver if he [Colangelo] wanted them." T.R. at 1626.

12. Transcript of the suppression hearing (August 21, 1972) at 635.

13. [The Court]: Now, gentlemen, over the weekend so far as I know, but I must confess I didn't read the papers that carefully I am sure, but I know of no publicity whatever concerning

the publicity that you all brought to my attention at various times last week.

Is there anything about that now that you have to tell me?

MR. BOBICK: Your Honor, we served subpoenas on—

THE COURT: We will get to that in a moment. Is there anything else in the papers?

MR. ALPERIN: There was a big story about organized crime and what the New York City Police Department is going to do with people mentioning—

THE COURT: I am talking about this case.

MR. ALPERIN: That is my whole point, I discussed it, to be frank, placing my client on the stand and I discussed the problems that he would have—

THE COURT: Please, I don't want to be privy to any conversations with your client. I am only trying to ascertain was there any article dealing with this case which came out on Friday evening, all day Saturday or all day Sunday?

MR. GREENBERG: Not in specific terms.

the stand might place on the other; rather, he was referring to his concern about the prejudicial impact of the recent publicity of the two murders as related to an underworld war for drug business.[14] The Court finds implausible the suggestion that Yanni's testimony could have damaged Colangelo's defense, and petitioner presents the Court with no set of facts to support the claim.[15]

■ Nor does the record support Yanni's allegation that defense counsel did not adequately represent him because he (Alperin) was more concerned with Colangelo's defense. Alperin undertook a thorough cross-examination of the witnesses who testified against Yanni and devoted equal attention to Yanni's defense in his opening and closing remarks.[16] Indeed, the record demonstrates that Alperin took particular interest in Yanni: during the trial Yanni experienced several seizures. Alperin personally escorted Yanni to the examining physician's office and actively pursued the matter of Yanni's health thereafter.[17] The record does not support a finding that Alperin favored the defense of Colangelo over Yanni—to the contrary, it demonstrates competent and zealous representation of each. This is not a case, typical in the situation of joint representation, where counsel argues the innocence of one defendant by placing the blame on the other.[18]

In sum, petitioner has "done no more than suggest a theoretical conflict of interest and [has] pointed to no specific prejudice" in this case.[19] The Court is persuaded beyond peradventure of doubt that Yanni's conviction was not influenced in any respect by the fact of joint representation; there is no basis for any claim that Alperin's representation of Colangelo in any way militated against a vigorous and competent defense of petitioner. The government has abundantly established that no prejudice occurred by reason of such representation.

The petition is denied.

---

14. *See United States v. Manfredi,* 488 F.2d 588, 603 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

15. The Court is not unaware that the difficult question of whether or not a defendant should take the stand is made far more difficult in a joint representation situation. *See United States v. Carrigan,* 543 F.2d 1053, 1056 (2d Cir. 1976); *Morgan v. United States,* 396 F.2d 110, 114 (2d Cir. 1968). But, as this Circuit has noted:

> [w]hen a trial culminates in a verdict of guilty the temptation is great for a defendant, armed with hindsight, to claim that his lawyer's strategy in not permitting him to run the cross-examination gauntlet was motivated by a conflict of interest. . . . [I]n the absence of objective evidence of corroboratory circumstances, such post-trial claims must be viewed with some suspicion . . . ."

*United States v. Wisniewski,* 478 F.2d 274, 284 (2d Cir. 1973).

16. *See* T.R. at 33–37, 2631–50. Alperin did call one witness in Colangelo's defense while he called none on behalf of Yanni. However, this appeared to be a tactical decision rather than any bias on the part of counsel in favor of the defense of Colangelo.

17. *See* T.R. at 694–703, 1506–14.

18. *Cf. United States v. DeBerry,* 487 F.2d 448, 453 (2d Cir. 1973); *Mone v. Robinson,* 430 F.Supp. 481, 487 (D.Conn.1977).

19. *United States v. Lovano,* 420 F.2d 769, 774 (2d Cir.), *cert. denied,* 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970).