"Big Black" a/k/a Frank SMITH, Petitioner-Appellee,

v.

Paul REGAN, Chairman, New York State Parole Department, Respondent-Appellant.

No. 996, Docket 78–2020.

United States Court of Appeals, Second Circuit.

Argued June 1, 1978.

Decided Aug. 17, 1978.

John M. Farrar, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellant.

Elizabeth M. Fink, New York City (Fink & Meyers, New York City, of counsel), for petitioner-appellee.

Before MANSFIELD, TIMBERS, Circuit Judges, and HOFFMAN, District Judge.*

MANSFIELD, Circuit Judge:

The issue on this appeal by the Chairman of the New York State Parole Department from the grant by Judge Weinstein of the Eastern District of New York of a writ of habeas corpus sought by appellee Smith, a state prisoner now on parole, is whether Smith had been unconstitutionally denied the effective assistance of counsel in a state criminal trial by reason of his trial attorney's joint representation of a co-defendant

* Of the United States District Court for the Eastern District of Virginia, sitting by designation.

in the trial. We reverse for lack of a sufficient showing that appellee was prejudiced by the joint representation.

On December 13, 1965, appellee and his co-defendant, John Saddler, were found guilty, after a jury trial in Kings County Supreme Court, of robbery in the first degree, grand larceny, and assault in the second degree. On April 11, 1966, Smith was sentenced to a term of 10 to 15 years imprisonment. He appealed this conviction to the Appellate Division, Second Department, raising, among other issues, the question of whether he had been denied effective assistance of counsel by reason of the joint representation. The conviction was unanimously affirmed on December 29, 1967. Leave to appeal to the New York Court of Appeals was denied on January 29, 1968. Thereafter, Smith brought three *coram nobis* petitions, two of which dealt with the claimed conflict of interest between Smith and his co-defendant.

On May 30, 1975, following denial of Smith's last state *coram nobis* petition and his release on parole, he filed in the Eastern District of New York his present petition. After delays occasioned by non-prosecution of his petition and two appeals, the application was the subject of an evidentiary hearing before Judge Weinstein.

The record reveals that the state indictment, trial and conviction of Smith and of a co-defendant John Saddler, also known as "Horse" or "Ironhorse," arose out of their robbery of a dice game during the early morning hours of March 10, 1975. Both Smith and Saddler were previously known to the dice game players, who promptly assisted the police in tracking them down on the same day to an apartment in the "Red Hook" or "Erie Basin" section of Brooklyn where they were caught red-handed, each in possession of fruits of the robbery. Upon arrest either Smith or Saddler uttered an inculpatory statement to the effect that the victims of the robbery "didn't have to do this," since they "could have got together, or straightened things out, later."

At the state trial four participants in the dice game were called as witnesses and positively identified Smith and Saddler as the two robbers. The evidence of their guilt was sufficiently strong to lead Judge Weinstein later to remark with respect to Smith, "—the evidence is so overwhelming here that I don't think Clarence Darrow could have done anything for the defendant."

Shortly after their arrest, Smith and Saddler determined to retain an attorney, Smith gave Saddler money for this purpose and Saddler retained Eugene Pelcyger, Esq., whom Saddler had employed on various occasions. Smith, who was 30 years of age and had been educated through the eleventh grade in high school, had a prior criminal record consisting of various misdemeanor convictions and had used lawyers previously. Prior to trial the prosecutor offered both defendants, who were charged with felonies (robbery in the first degree and grand larceny) the opportunity to plead guilty to assault in the third degree, a felony for which each would receive a 2½ to 3-year sentence, provided both would plead guilty. However, when Saddler refused, petitioner followed suit, saying "I don't want to deal with it, Horse, unless you deal with it."

During the trial the judge explored the proposed plea bargain thoroughly with the two defendants, pointing out to Smith that if he pleaded to the lesser charge he could expect a "humane sentence" whereas if he were found guilty the court would be required, because of his criminal record, to sentence him to a minimum of 10 years imprisonment, with the possibility of a maximum of 30 years. Neither defendant opted to plead guilty.

During the course of the colloquy with the court regarding the plea bargain Pelcyger suggested to the trial judge that he be permitted to withdraw as counsel for the defendants because they were expressing disagreement with his trial strategy, and if the trial should result in guilty verdicts, they would blame him, claiming he "framed them,—railroaded them." When the judge,

despite denials by the defendants of dissatisfaction with their jointly-retained attorney, announced that he was going to declare a mistrial, permitting Pelcyger to withdraw, and would arrange for other counsel to represent them, both defendants staunchly insisted that they wanted Pelcyger to represent them and not new counsel. Finally the trial judge relented, observing that Pelcyger had been "a very competent lawyer" in handling the case, and permitted the trial to continue. Thus the record is clear that the discord between Pelcyger and his two clients did not arise from any conflict of interest between the defendants but from their criticism of strategy pursued by their counsel on behalf of both. Nor was it at any time suggested by anyone that there was a potential conflict of interest or that appointment of separate counsel for each defendant was advisable.

The trial continued, with four witnesses positively identifying the two defendants as the robbers and some identifying the jewelry found on the defendants at the time of arrest to be that taken by the robbers. Neither of the defendants, who had prior criminal records, took the witness stand in their defense. Not surprisingly, both were found guilty.

The hearing before Judge Weinstein upon appellee's petition was brief, consisting of the introduction of portions of the state court record, which were the subject of argument by counsel, and of testimony by Smith. Because Pelcyger was out of the state at the time of the hearing, he was not available to testify. Smith described the arrest of Saddler and himself, their retention of Pelcyger to represent them, the rejection of Saddler and himself of the prosecutor's proposal (conveyed by Pelcyger) for a "package deal" under which each would be sentenced from two and one-half to three years upon guilty pleas to the lesser

charge, the state trial judge's explanation of the mandatory minimum sentences that would be required upon conviction after trial, and the consequences of the proposed plea bargain for Smith and Saddler. Smith testified that he was never advised of the advantages to him of having his own separate counsel.

Judge Weinstein grounded his decision granting the writ principally upon his conclusion that there was a conflict of interest between the two defendants, which may have precluded Pelcyger from seeking a separate plea bargain for Smith and from permitting Smith, who had a less serious criminal record than Saddler, to take the witness stand in his own defense. The district court also alluded to "a serious question of identification which should have been handled by a separate attorney," and "a serious question of how the statement of the defendant or the co-defendant at the time of apprehension should be used." (App. 44–46). The court concluded that there was "a failure of due process because of a failure to advise a defendant of the necessity of obtaining independent counsel." From this decision respondent appeals.

## DISCUSSION

Petitioner has clearly exhausted his state remedies[1] as required by 28 U.S.C. §§ 2254(b) and (c). Turning to the merits, since the principles governing the constitutionality of joint representation of co-defendants by the same counsel have been fully explicated by us in several recent decisions dealing with the issue, *Salomon v. LaVallee*, 575 F.2d 1051, 1054 (2d Cir. 1978); *Kaplan v. Bombard*, 573 F.2d 708, 712 (2d Cir. 1978); *United States v. Carrigan*, 543 F.2d 1053, 1055 (2d Cir. 1976),[2] they need

1. Not all the particular instances of conflict raised in Smith's habeas petition were presented to the state courts but the substance of the claim was put forward at least three times, fulfilling the requirements of *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

2. The United States Supreme Court has recently concluded that no showing of prejudice is necessary when the trial court improperly requires joint representation over a timely objection by defense counsel that such representation will present a conflict of interest. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 1181, 55 L.Ed. 426, 437 (1978). The Supreme

not be repeated here. The important point for present purposes is that to be entitled to relief on grounds of ineffective assistance of counsel arising out of joint representation it must appear that there was an actual or potential conflict of interest between the defendants and some specific instance of prejudice resulting from the joint representation.

> "The mere representation of two or more defendants by a single attorney does not automatically give rise to a constitutional deprivation of counsel. It is settled in this Circuit that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel." *United States v. Carrigan*, 543 F.2d at 1055, quoted with approval in *Kaplan v. Bombard*, 573 F.2d at 712, and *Salomon v. LaVallee, supra*, 575 F.2d at 1054.

Here the record fails to reveal this essential element.

■ Since the record consists almost entirely (except for Smith's testimony) of the state court trial transcript and other papers, we are from a practical standpoint in as good a position as the district court judge to determine what conflict and prejudice, if any, resulted from the joint representation of Smith. *United States ex rel. Lasky v. LaVallee*, 472 F.2d 960 (2d Cir. 1973). Turning first to the district court's finding of conflict and prejudice based upon the inability of Smith's joint counsel to negotiate a separate plea bargain for him, the record discloses that the sole bargain offered by the prosecutor was a "package" or "both or nothing" deal, under which both defendants would have to plead guilty to the lesser charge before the prosecutor would consent to the bargain. Since Saddler refused the offer there was no basis for

a separate plea negotiation on behalf of Smith, even if he had wanted such a bargain, which appears unlikely since Smith, although sufficiently educated, worldly-wise, and experienced in criminal matters to appreciate his predicament and options, likewise refused to negotiate a plea after learning "Horse" had declined to do so. Nor is there the slightest indication that such a bargain might have been obtained for Smith by separate counsel. On the contrary, since the prosecutor had an iron-clad case against both defendants, with four witnesses who could (and did) positively identify Saddler and Smith, prior acquaintances, as the robbers, there was no reason for the State, once it was required to try its case against one defendant not to go to trial against both. The advantage to the State of a "package deal," moreover, was that it would not only dispose of the entire case but, as Smith himself recognized, it would make Saddler just as much a "three-felony" offender as if he had been convicted after a trial.

■ The decision of Smith's joint counsel not to have him testify in his own defense appears to have been sound trial strategy under the circumstances. It would have been unwise for counsel, joint or separate, to suggest any other course. Although Smith's prior criminal record was not as serious as Saddler's, Smith had been convicted of desertion from the Army, third degree assault resulting from a rape charge, petty larceny, violation of the narcotics laws, and unlicensed operation of an automobile resulting from a charge for auto theft. Under New York law, all of these convictions would have been admissible to impeach him. *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974).

■ It is not suggested, much less represented, that Smith could have given excul-

---

Court consistently referred only to the situation where an express objection had been made, *Holloway*, at 489, 98 S.Ct. at 1181, 55 L.Ed. at 437, and left undecided the nature and extent of the conflict that must be shown and the inquiry that is required by the trial judge in the absence of an objection or request.

In Smith's case no motion for relief of joint counsel on the ground of conflict of interest was made. Consequently, we are relegated to our own prior decisions with respect to the inquiry that is required by the court and the prejudice that must be shown. See *Salomon v. LaVallee, infra*, at 3145–46.

patory testimony in his own defense. In view of the overwhelming evidence against him, including testimony of several witnesses that he possessed some of the stolen articles when arrested, his serious criminal record militated against any testimony by him being given credence. Moreover, the barrage of eyewitnesses who positively identified Smith, whom they previously knew, as one of the robbers makes it impossible for us to comprehend the district court's comment that "[t]here was a serious question of identification which should have been handled by a separate attorney."

 Turning next to the incriminating statement made by one of the two defendants at the time of arrest, which was later attributed by three witnesses, including the two arresting officers, to Saddler, and by three of the victim-witnesses to Smith, petitioner argues that separate instead of joint counsel could have cross-examined these witnesses more effectively and might have induced all of them to impute the statement to Saddler rather than to himself. However, Pelcyger cross-examined the witnesses vigorously on this issue, and we are satisfied that cross-examination by separate counsel—even a modern Clarence Darrow—would not have eliminated the issue from the case or produced a different result. The conflicting testimony would have been admitted, with the identity of the speaker to be determined by the jury. The state trial judge properly instructed the jury that the incriminating statement could not be used against a defendant unless the jury found that he had made it or that it had been made by the co-defendant and adopted by the defendant's silence. A separate counsel for Smith could not have obtained from the court a more favorable instruction for Smith.

Thus, this is not a case where joint counsel was placed in the dilemma of having either to pursue or abandon a defense or tactic that would help one defendant but hurt the other, see, e. g., *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Carrigan, supra* ; *United States v. Wisniewski*, 478 F.2d

274 (2d Cir. 1973). Even if we assume that the principles forged in our recent decisions with respect to joint representation are retroactive and govern a state trial held 13 years ago, which is doubtful, and that since the trial judge failed to make an inquiry regarding joint representation of the type prescribed years later, see *United States v. Carrigan, supra*, the burden shifted to the State to show lack of prejudice, we find no conflict or prejudice to Smith in the trial record as a result of the joint representation of himself and Saddler.

 Our decision in this case is not to be construed as relaxing in any way our adherence to the view that joint representation must be carefully scrutinized and that separate representation is usually to be favored in multiple-defendant criminal cases. However, in view of the absence of any conflict or specific prejudice from the joint representation here, the judgment of the district court must be reversed.