George KAPLAN, Plaintiff,

v.

Roy BOMBARD, Superintendent,
Greenhaven Correctional
Facility, Defendant.

No. 76 Civ. 2435 (GLG).

United States District Court,
S. D. New York.

Jan. 3, 1977.

Kunstler & Hyman, New York City, for plaintiff by Steven J. Hyman, New York City, of counsel.

Robert M. Morgenthau, Dist. Atty., New York County, New York City, for defendant by Richard H. Girgenti, Peter L. Zimroth, Asst. Dist. Attys., New York City, of counsel.

## OPINION

GOETTEL, District Judge.

Petitioner, George Kaplan, has sought a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. He is presently incarcerated at the Greenhaven Correctional Facility, Stormville, New York, having been convicted of two counts of arson in the second degree and two counts of criminal mischief. Petitioner alleges that he has exhausted his state remedies, as required by 28 U.S.C. § 2254. Respondent does not challenge this contention.

Kaplan was charged, along with Jerry Gomberg and Martin Hodas, with setting fire to two "massage parlors" competing with the "Geisha House" in Times Square, allegedly owned by them. They were charged with having three of their employees set two fires after warnings to their competitors to raise their prices had been ineffective.

In support of his petition, Kaplan alleges that he had been deprived of his constitutional rights to the effective assistance of counsel and was thus denied due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments. At trial, Kaplan's attorneys, Kassner and Detsky, also represented the two co-defendants in the case.* It is alleged that "a conflict of inter-

---

\* Detsky took charge of the pre-trial proceedings. Kassner tried the case. Detsky had represented two of the employee accomplices and only dropped them when ordered by the court since they had made statements incriminating their principal clients. (They testified for the prosecution at trial.) Kassner argued one of the appeals for Gomberg and while he was not so bold as to assert his own conduct as grounds for reversal, did contend that if Kaplan's argu-

est arose of such magnitude as to prejudice petitioner and deny him a fair and effective defense." It is contended that petitioner did not knowingly and intelligently waive his rights to effective assistance of counsel since he was not properly advised by his attorneys that the theories of defense for himself and defendant Hodas (who was acquitted) were in substantial conflict. Finally, it is claimed that the trial court failed to make a proper inquiry into defendant's waiver and neglected to advise petitioner sufficiently of the possible nature of the conflict and the disability which it might place upon petitioner's counsel to effectively defend him.

In the unanimous decision of the New York State Court of Appeals, *People v. Gomberg,* 38 N.Y.2d 307, 379 N.Y.S.2d 769, 342 N.E.2d 550 (1975), it was held that the trial court had properly inquired of the appellants and their attorney whether joint representation would result in a conflict of interest. Such inquiry was deemed sufficient to protect Kaplan's right to effective assistance of counsel since all of the defendants were made aware of the possible conflict and elected to continue to retain attorneys Kassner and Detsky throughout the proceeding.

Before commencing the trial, Justice Denzer, who presided, asked the three defendants if they were dissatisfied with counsel or whether they believed that joint representation at trial would result in a conflict of interest. Hodas expressed a desire to continue with the present counsel. Kaplan didn't respond and Gomberg indicated that he did not understand the court's question. The court thereafter more fully explained the problem for the benefit of Gomberg and his two co-defendants:

> I just want to make certain that in your mind there is no reason that one attorney should [sic] represent all three of you; that the attorney won't be put in a position of having to take a course of action which is favorable to one, but not to another. I just want to make sure you

don't feel that way. Apparently you don't if you retained the same attorney; do you understand? (R.20a–21a.)

Gomberg then indicated that he understood the situation and responded that it might be "better for us to get another lawyer." (R.21a). When Justice Denzer inquired whether there was any conflict between Gomberg and the other defendants, Gomberg replied, "I think maybe another lawyer would be helpful to us. * * I would like to talk it over with another lawyer." (R.21a). During this exchange Kaplan remained silent.

Afterwards, Justice Denzer pursued the conflicts issued by asking Detsky if anyone had ever indicated that there might be a conflict and suggested other counsel. Detsky answered:

> Four or five days ago, I suggested to Mr. Hodas that there might be a conflict and either another or the other two should get themselves another lawyer. Mr. Hodas, Mr. Kaplan and Mr. Gomberg said they had confidence in our firm to handle it. But I do want this Court to understand that it was discussed in our office and I felt one of the three should get another counselor.
>
> The Court: The way the situation stands is that you advised them of this and they told you they didn't want to hire other counsel?
>
> Mr. Detsky: That's correct. (R.23a).

The Court then terminated the inquiry and directed that trial commence but indicated that if, at any point in the trial, any defendant believed a conflict existed, he could have other counsel. Although the Court's inquiry was not directed at petitioner Kaplan *per se,* he was present during the extended discussion of the conflict issue and remained silent throughout. At no time during the proceeding did he object to the joint representation or indicate that a conflict might arise as a result of retaining Kassner and Detsky as defense counsel. Furthermore, as Detsky indicated, he had consented to the joint representation at a meeting held prior to the trial.

ments concerning a conflict prevailed it would require reversing the conviction of his client.

To round out this performance, Kassner also appeared as a witness at trial for defendants.

As the New York Court of Appeals noted in its decision on the appeal, the resolution of this issue brings into conflict two constitutional protections: the right to the effective assistance of counsel and the right to select counsel of one's choice.

The Supreme Court held in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937) and *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1974), that any waiver of a fundamental constitutional right must be a knowing and intelligent one. In *Schneckloth,* the Court noted that the *Johnson* decision "established an appropriately heavy burden on the Government before waiver could be found —'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 236–37, 93 S.Ct. at 2052.

However, it is equally well-established that a defendant may waive his Sixth Amendment rights to effective assistance of counsel and to confrontation of witnesses just as he may knowingly and intelligently waive any constitutional right. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Glasser v. United States,* 315 U.S. 60, 70–71, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Johnson v. Zerbst, supra,* 304 U.S. at 464–65, 58 S.Ct. 1019; *United States v. Armedo-Sarmiento,* 524 F.2d 591 (2d Cir. 1975); *United States v. DeBerry,* 487 F.2d 448 (2d Cir. 1973).

In *United States v. Mari,* 526 F.2d 117 (2d Cir. 1975) the Second Circuit noted that the *DeBerry* case:

requires that the trial judge conduct a careful inquiry, including a personal interrogation of the defendants, to satisfy himself that no conflict exists and that the parties had no valid objection to joint representation. 526 F.2d at 119.

In *United States v. Carrigan,* 543 F.2d 1053 (2d Cir. 1976), Judge Mulligan recapitulated the current state of the law in the Second Circuit:

When a potential conflict of interest arises, either where a court has assigned the same counsel to represent several defendants or where the same counsel has been retained by co-defendants in a criminal case, the proper course of action for the trial judge is to conduct a hearing to determine whether a conflict exists to the degree that a defendant may be prevented from receiving advice and assistance sufficient to afford him quality of representation guaranteed by the Sixth Amendment. *The defendant should be fully advised by the trial court of the facts underlying the potential conflict and be given the opportunity to express his views.* 543 F.2d at 1055 (Emphasis added).

In this case, the trial court attempted to make a reasonable inquiry into possible conflict. The court explained to the defendants what was meant by a conflict of interest. The court also questioned defense counsel and learned that the possibility of conflict had been discussed with the respective defendants and the suggestion was made that defendants might want to retain separate counsel.

In *United States v. Armone,* 363 F.2d 385, 406 (2d Cir. 1966), the Second Circuit held that the trial judge's inquiry directed to counsel as to possible conflict of interest was sufficient to protect the rights of the defendant. The court held, moreover, that nothing in *Glasser v. United States, supra,* requires the court to take further steps after receiving assurances from counsel that defendants have acquiesced in the retention of that attorney as defense counsel, after the defendants have been sufficiently informed of the potentiality of the conflict. Undoubtedly the procedures would have been enhanced by an allocution of Kaplan. *United States v. Mari, supra.* However, the court was faced with other difficulties. Defense counsel was seeking an adjournment of a month (although the case had been marked ready by both sides a couple of months earlier), which the prosecution was strenuously resisting. If his position was sought, Kaplan could have aided this strategy by replying, like Gomberg, that he wished to consult with another attorney about the possibility of obtaining new counsel.

■ Nevertheless, the essential elements of a knowing and intelligent waiver of the effective assistance of counsel are present. Kaplan had been alerted by both the trial judge and his counsel as to the possibility of a conflict of interest arising from the joint representation of all defendants by the same counsel. Kaplan heard his counsel represent to the trial court that discussions had taken place and that Kaplan had consented to the continued representation. Finally, the trial court gave petitioner the opportunity to dispense with his present counsel and to retain different counsel for either representation or consultation, at any time during the course of the trial, if petitioner believed that any conflict or prejudice arose as a result of the joint representation.

As the opinion of New York's Court of Appeals notes, the defendants were intelligent and perceptive businessmen. They did not complain at the time. Had they been compelled to take separate counsel and been convicted they would, quite likely, have asserted that their constitutional right to counsel of their choice had been violated. They cannot have things both ways.

■ The deficiencies, if any, in the pretrial inquiry are immaterial unless it can be shown that the joint representation resulted in actual prejudice to the petitioner. The Second Circuit has considered a number of cases where the issue of denial of effective assistance of counsel was raised. It has generally been held that a defendant, to establish a Sixth Amendment claim, must demonstrate "some specific instance of prejudice, some real conflict of interest, resulting from a joint representation." *United States v. Carrigan, supra; United States v. Mari,* 526 F.2d 117, 119 (2d Cir. 1975); *United States v. Vowteras,* 500 F.2d 1210, 1211 (2d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *United States v. Wisniewski,* 478 F.2d 274, 281 (2d Cir. 1973); *United States v. Lovano,* 420 F.2d 769, 773 (2d Cir.), *cert. denied,* 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970). "The mere representation of two or more defendants by a single attorney does not automatically give rise to a constitutional deprivation of counsel." *United States v. Carrigan, supra.* The *Carrigan* panel adopted the First Circuit holding in *United States v. Foster,* 469 F.2d 1 (1st Cir. 1972), that the burden of proof shifts to the government when the trial court has failed to make a satisfactory inquiry on the question of prejudice.

The Court in *Morgan v. United States,* 396 F.2d 110, 114 (2d Cir. 1968), addressed the problem of whether defendants with the same counsel should take the stand:

This kind of decision, difficult enough where two defendants at the same trial are represented by different counsel, is made doubly difficult where they are represented by the same counsel. The decision whether a defendant should testify may be unduly affected by the risk that his testimony may develop so as to disclose matters which are harmful to the other defendant or which conflict with the other defendant's story. The attorney's freedom to cross-examine one defendant on behalf of another will be restricted where the attorney represents both defendants. And if, where two defendants are represented by the same attorney, one defendant elects to take the stand and the other chooses not to, the possible prejudice in the eyes of the jury to the defendant who does not take the stand is almost inescapable.

Here, only defendant Hodas took the stand. He testified that he was only a landlord collecting rent from the true owners of the Geisha House massage parlor, Kaplan and Gomberg, and, consequently, would have no reason or motive to drive competing massage parlors out of business. Petitioner's involvement in the massage parlor business was not put in issue but it is argued that this created a "negative fall out."

In the *Carrigan* case, the testimony of the defendant who took the stand directly conflicted with a statement his co-defendant had made to the F.B.I. thereby placing the co-defendant's credibility in issue. Since the co-defendant did not testify, this preju-

dice was permitted to stand unchecked. The *Carrigan* court held that these circumstances brought the case within the ambit of *Morgan v. United States, supra,* as prejudice sufficient to warrant a reversal of the co-defendant's conviction. In *United States v. DeBerry, supra,* the prejudice was even more clear-cut since the defendant who took the stand incriminated the non-testifying co-defendant with his testimony.

In the case at bar, as the State rightly contends, petitioner cannot merely point to a difference in his and Hodas' posture at trial and establish that there must have been a conflict of interest. *See United States v. Lovano, supra; United States v. Sheiner,* 410 F.2d 337 (2d Cir.), *cert. denied,* 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969); *United States v. Armone,* 363 F.2d 385 (2d Cir.), *cert. denied, Viscardi v. United States,* 385 U.S. 957, 87 S.Ct. 391, 17 L.Ed.2d 303 (1966). Kaplan's defense did not run afoul of Hodas' defense because it was not a theory of the latter's defense to shift the blame for the arsons to Kaplan. There was merely an attempt made to exculpate Hodas without incriminating either of the other two co-defendants.

During a post-conviction hearing, Justice Denzer found that there was no conflict of interest among the defenses presented at trial for the three co-defendants. In fact, he found that there was a "community of interest" among the defendants in that the evidence was consistent "in indicating the equal responsibility of all three men." He stated further that:

> The testimony throughout referred to Hodas, Kaplan and Gomberg—to Marty, George and Jerry.
>
> When one made an incriminating statement or threat, or gave a direction indicating culpability, the others were almost invariably present and lent their assent.
>
> When an act was described that was indicative of responsibility for the fires, it was linked jointly to all three; not isolated upon one defendant or another. There is no question of that.
>
> The defendants' interests were identical insofar as their attack upon the People's evidence was concerned, namely to discredit the character, motives and veracity of the prosecution witnesses; in short, to discredit their testimony.
>
> No defendant could rest comfortably, with any part of the People's case; for each it was imperative to show that it was unworthy of belief. (R.1676–77).

It was in the interest of all three defendants that the primary defense of discrediting the prosecution's witnesses was attempted because of this "community of interest" described by Justice Denzer. If the jury believed that Hodas had taken no part in ordering and arranging the arsons this would undermine the prosecution's cases against all three defendants in its entirety since it was crucial to the consistency of the State's evidence that all the events be linked to all the defendants.

■ Generally, a defendant's claim that he was denied effective assistance of counsel will not be entertained simply because his trial resulted in a guilty verdict and he was represented by the same attorney which a co-defendant also retained. As the Second Circuit in *United States v. Wisniewski, supra,* noted:

> When a trial culminates in a verdict of guilty the temptation is great for a defendant, armed with hindsight, to claim that his lawyer's strategy in not permitting him to run the cross-examination gauntlet was motivated by a conflict of interest. . . . However, in the absence of objective evidence of corroboratory circumstances, such post-trial claims must be viewed with some suspicion . . . . . 478 F.2d at 284.

Hodas had never been convicted of a crime in the past while both Kaplan and the third defendant, Gomberg, who also did not testify, had criminal records. Therefore, the testimony of Kaplan and Gomberg was subject to impeachment. The decision to call Hodas as a witness and not either of the other defendants appears to be a sound trial strategy since it avoided exposing defendants to impeachment by prior conviction as well as the risk of contradictory testimony. And, as noted earlier, Hodas'·

testimony worked to exculpate all defendants.

Petitioner's counsel put forth other ways in which the joint representation may have affected the trial strategies employed. They are not convincing. While the firm of Kassner and Detsky did not demonstrate a high degree of concern for the ethics of the profession, petitioner made a knowledgeable decision to be represented by them despite this. Moreover, the position of the defendants was so intertwined that (except possibly for Hodas, who was acquitted nevertheless) conflict and prejudice could hardly result. The petition must be denied.

SO ORDERED: