George DUCKETT and Delores Duckett, Plaintiffs-Appellants,

v.

Eve SILBERMAN, Defendant-Appellee.

No. 31, Docket 77-7164.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1977.

Decided Jan. 6, 1978.

---

James I. Meyerson, New York City (Nathaniel R. Jones, Thomas Hoffman, and N. A. A. C. P., New York City, on the brief), for plaintiffs-appellants.

Gerald Murray, Jamaica, N. Y., for defendant-appellee.

Before MANSFIELD and TIMBERS, Circuit Judges, and DOOLING, District Judge.*

TIMBERS, Circuit Judge:

On this appeal from an order entered after a bench trial in the Eastern District of New York, Thomas C. Platt, District Judge, which dismissed an action for declaratory and injunctive relief plus damages brought by plaintiffs who alleged violation of their constitutional and civil rights resulting from defendant's refusal to sell her house to plaintiffs assertedly because of plaintiffs' race, the issue is whether the district court was clearly erroneous in finding that de-

fendant refused to sell her house to plaintiffs for reasons unrelated to race and that plaintiffs were not willing to purchase it on the terms specified by defendant. We hold that the district court's findings of fact were not clearly erroneous. We affirm.

I.

In October 1974 defendant, Mrs. Eve Silberman, a white citizen, decided to sell her one-family house in the Kew Garden Hills section of Queens, New York. She and her daughter, Mrs. Ravelle Brickman (the "sellers"), engaged a realtor, Peter Smetana, who stated that he could get at least $60,-000 for the house. Subsequently Mrs. Silberman went to live in Wisconsin with her son, whereupon Mrs. Brickman assumed responsibility for selling the house. Thereafter the sellers received several offers ranging from $40,000 to $50,000, all of which were rejected. In February 1975 the asking price was reduced from $60,000 to $55,-000, but no acceptable offers within this range were received. The house remained vacant after Mrs. Silberman left for Wisconsin, until eventually a buyer was found.

In late June 1975 plaintiffs Mr. and Mrs. George Duckett, a black couple, conferred with Smetana about purchasing a house. He informed them of the availability of the Silberman house and arranged for them to see it. Smetana pointed out that certain plumbing repairs were necessary. He told the Ducketts that the price had been reduced from $60,000 to $55,000. Early in July, after obtaining an appraisal of their own, the Ducketts offered $42,000 for the house. Smetana promised to inform the sellers of this offer.

About two weeks later, having heard nothing from Smetana, the Ducketts asked him if their offer was acceptable. Smetana told them that in response to their offer the asking price had been reduced to $49,000. Smetana testified that Mrs. Brickman had asked him whether the prospective buyers were Jewish. Smetana responded that they

---

* Hon. John F. Dooling, Senior United States District Judge, Eastern District of New York, sitting by designation.

were not but that they were black. According to Mrs. Brickman, she told Smetana that it would be nice to have a black family in the neighborhood.

On July 26, the day after their conversation with Smetana referred to above, the Ducketts raised their offer to $44,000. Shortly thereafter they made a final offer of $45,000. This offer was communicated to the sellers. At this point Mrs. Brickman's brother in Wisconsin (son of Mrs. Silberman) asked Smetana to delay acting on the Ducketts' offer to see if any better offer could be obtained. On August 19, however, the sellers agreed to accept the Ducketts' offer of $45,000, this being $10,000 less than the price originally asked of the Ducketts. Mrs. Brickman testified that the price was reduced upon the understanding that the Ducketts would accept the house "as is".

Gerald Murray, Esq., the sellers' attorney, was out of the country when the agreement was reached. Upon his return he drafted a contract of sale. On September 2 he discussed the terms of the contract with Thomas Hoffman, Esq., the Ducketts' attorney. Hoffman requested that the sellers repair the bathroom and kitchen plumbing; that they assume the risk of unintentional damage to the house from the date of the contract to the date of closing; and that the appliances be delivered in working condition. On behalf of the sellers Murray rejected these conditions and told Hoffman that the deal was off. Hoffman asked Murray to discuss the conditions with his clients before cancelling the agreement.

Hoffman contacted Murray several times after their September 2 conversation, but Murray had not received a response from his clients. In the meantime the Ducketts instructed Hoffman to withdraw the proposed conditions in order to facilitate the contract signing. On September 19 Hoffman informed Murray by telephone that the Ducketts' were prepared to sign the contract at the agreed price of $45,000 without the proposed conditions. Murray said that he would discuss this with his clients.

Not having heard from Murray after their September 19 conversation, Hoffman called Murray again on October 3 to determine the status of the Ducketts' offer. Murray informed him that another person was interested in buying the house. Hoffman responded that he was authorized to match any bona fide offer, although he later conceded that at that time he did not have a power of attorney to make such an offer. On the same day Hoffman sent Murray a letter formally withdrawing the conditions and stating that his clients "would like the right of first refusal on any bona fide offer."

On October 9 Murray informed Hoffman that on the previous day, October 8, Mrs. Silberman had entered into a contract to sell the house for $46,000 to a white couple, Mr. and Mrs. Menahem Medel Beer (the "buyers"). This was $1,000 more than the Ducketts had offered to pay. Moreover, since no realtor was involved in the sale to the Beers, the sellers saved $2,000 in brokerage fees. At the signing of the Silberman-Beer contract the buyers requested the sellers to make repairs, as the Ducketts had, but did not insist on them when the sellers objected. For aught that appears in the record, at no time during the Silberman-Beer negotiations did the buyers ask the sellers to guarantee the appliances or to bear the risk of damage to the property between the date of the contract and the date of closing. Nevertheless, although the contract of sale provided that the premises were sold "as is", it also specified that the appliances were to be in operating condition and that the sale price was to be reduced if the premises were damaged prior to the date of closing.

The Silberman-Beer closing took place on April 8, 1976.

## II.

The instant action was commenced October 20, 1975—eight days after the contract of sale was signed and almost six months before title was closed.

The gravamen of the Ducketts' complaint was that, because of their race, they were denied equal access to and an opportunity to pursue to completion the purchase of the Silberman house. They alleged violations of their constitutional and civil rights, including violations of the Thirteenth Amendment and the Fair Housing Act of 1968, 42 U.S.C. §§ 3601–31 (1970). They sought declaratory and injunctive relief, plus damages.

Simultaneously with the commencement of the action, plaintiffs by an order to show cause sought a preliminary injunction, pursuant to Fed.R.Civ.P. 65, to bar the proposed sale of the Silberman house to other persons pending the outcome of the litigation. Defendants cross-moved for summary judgment, pursuant to Fed.R.Civ.P. 56, or for dismissal of the complaint for failure to state a claim on which relief could be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

Following a hearing on these motions in November 1975 (at which plaintiffs called as witnesses, realtor Smetana, George Duckett and attorney Hoffman), the court filed an opinion on January 26, 1976 denying plaintiffs' motion for a preliminary injunction under the settled law of this Circuit and also denying defendant's cross-motion for summary judgment on the ground that factual issues remained for trial.

Thereafter the court decided the case on the merits in an opinion filed March 15, 1977. In addition to the record which was before the court on the earlier motions, the decision on the merits was based on a stipulation of facts and three depositions taken by plaintiffs. The court ordered that the action be dismissed essentially on the grounds that plaintiffs had failed to establish that "there [was] no apparent reason for the refusal of the defendant to [sell] the property to the [plaintiffs] other than

[plaintiffs'] race" or that "the [plaintiffs were] willing to . . . purchase the property on the terms specified by the owner" before a new purchaser had agreed to pay more for the property, citing *Bush v. Kaim,* 297 F.Supp. 151, 162 (N.D.Ohio 1969); *Fred v. Kokinokos,* 347 F.Supp. 942 (E.D. N.Y.1972).

From the order[1] of March 15, 1977 directing that the action be dismissed, the instant appeal has been taken.

### III.

■ We hold that the district court correctly followed the now generally accepted conditions set forth in *Bush v. Kaim, supra,* 297 F.Supp. at 162; and further that the court was not clearly erroneous in finding that defendant refused to sell her house to plaintiffs for reasons unrelated to race and that plaintiffs were not willing to purchase it on terms specified by defendant.

The record amply supports the court's finding that plaintiffs were unwilling to purchase on the terms specified by defendant. It was important to defendant that the house be sold "as is". It had been vacant for some time. Numerous repairs were necessary. The kitchen and bathroom plumbing leaked. The garage door was dilapidated. At the time of the negotiations with plaintiffs, defendant was preparing to live in a rest home. Her son and daughter were not well situated to handle repairs. The evidence established that the asking price was reduced from $60,000 to $45,000 upon the condition that the buyer would accept the house "as is". According to Mrs. Silberman's daughter, at $45,000 "not a screw was to be changed" for plaintiffs.

On appeal plaintiffs point out that two of the other terms proposed by them were included in the contract with the Beers, the

---

1. Apparently no *judgment* was ever entered here, although the court's decision of March 15, 1977 expressly so directed. We recently have indicated our displeasure with such practice. *Mallis v. Federal Deposit Ins. Corp.,* 568 F.2d 824, 827 n. 4 (2 Cir. 1977), *cert. dismissed,* —— U.S. —— (1978). We renew our criticism here.

Indeed, the appendix furnished to us in the instant case does not comply with F.R.A.P. 30. Aside from omitting the unfiled judgment, it does not contain the complaint despite the heavy reliance upon its allegations in the court's opinions and in the briefs on appeal.

We think this Court deserves better of counsel.

ultimate white buyers. True, that contract did provide that the appliances were to be turned over to the buyer in "operating" condition. But it is not clear that this amounted to the "guarantee" of appliances requested by plaintiffs. Nor was the Silberman-Beers clause providing for reduction of the purchase price if the premises should be damaged prior to closing clearly what plaintiffs had requested. It referred only to *immaterial* damage which might occur between the date of the contract and the date of the closing. Plaintiffs had requested that defendant bear the risk of *any* unintentional damage to the house prior to the closing. In view of plaintiffs' injection of conditions despite defendant's reduction of the sale price and her specification of terms, the record supports the finding that as of September 2 plaintiffs were not willing to purchase on defendant's terms.

█ Plaintiffs argue that when their conditions were withdrawn on September 19 defendant was under a duty to renew negotiations with plaintiffs. We disagree. Under the circumstances it would be unreasonable to hold that defendant was precluded from seeking another buyer after September 2. The house was vacant and, as such, a substantial liability. It was reasonable for defendant to have had second thoughts about a sale price of $45,000. At the outset the realtor had told her that he could get at least $60,000 for the house. At one point she received an offer of $50,000, but rejected it. In view of plaintiffs' initial refusal to take the house "as is" at $45,000 it was reasonable for defendant to assume that plaintiffs would not make a better offer and still accept the house in its then condition. Plaintiffs' injection of conditions contrary to defendant's offer amounted to nothing more than a counteroffer. Defendant was under no duty to accept it.

**2.** On this branch of the district court's finding, we have carefully considered such cases as *Jones v. Alfred H. Mayer,* 392 U.S. 409 (1968); *Burris v. Wilkins,* 544 F.2d 891 (5 Cir. 1977); *Moore v. Townsend,* 525 F.2d 482 (7 Cir. 1975); *Williams v. Mathews Co.,* 499 F.2d 819 (8 Cir.), *cert. denied,* 419 U.S. 1021, 1027 (1974); *United*

This does not end our inquiry. We turn to the other branch of the district court's finding, namely, that plaintiffs failed to establish that there was no apparent reason for the refusal of defendant to sell to plaintiffs other than the latter's race.

At the outset, it is undisputed that there was no evidence that race actually was considered a factor by the seller. In the only relevant testimony, Smetana, the realtor, stated that Mrs. Brickman had asked if the Ducketts were Jewish; and Mrs. Brickman stated that Smetana volunteered the information that the Ducketts were black. This certainly is a far cry from establishing that defendant's refusal to sell to plaintiffs was race-related.

Moreover, in view of our holding above, it follows that we believe there was substantial evidence to support the finding that defendant acted for reasons unrelated to race in selling to the Beers rather than to plaintiffs. Significant among such evidence was defendant's lowering of the offering price after learning of plaintiffs' race and Beer's firm offer of a substantially higher price. As pointed out above, even if we were to accept arguendo plaintiffs' contention that all obstacles to a sale to them at $45,000 had been withdrawn on September 19 before the new buyer was found, the record justifies an inference that by that time, because of plaintiffs' addition (and withdrawal) of conditions, defendant was having doubts about whether plaintiffs would go through with the transaction and decided to look for a better offer. And, of crucial significance, where credibility as to the September 19 withdrawal is an important factor, we decline to second-guess the findings of the trial judge in a case which is essentially factual. He was there. We were not.[2]

Affirmed.

*States v. Pelzer Realty,* 484 F.2d 438 (5 Cir. 1973), *cert. denied,* 416 U.S. 936 (1974). Upon the facts of the instant case, however, and especially in the light of our essential holding that the district court's findings of fact were not clearly erroneous, we believe that the cases cited above are inapposite.