George KAPLAN, Petitioner-Appellant,

v.

Roy BOMBARD, Superintendent, Green Haven Correctional Facility, Respondent-Appellee.

No. 19, Docket 77–2034.

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1977.

Decided Feb. 15, 1978.

Steven J. Hyman, New York City (Kunstler & Hyman, New York City, on the brief), for petitioner-appellant.

Richard H. Girgenti, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., and Peter L. Zimroth, Asst. Dist. Atty., New York City, on the brief), for respondent-appellee.

Before MANSFIELD and TIMBERS, Circuit Judges, and DOOLING, District Judge.*

TIMBERS, Circuit Judge:

On this appeal from an order entered in the Southern District of New York, Gerard L. Goettel, District Judge, 444 F.Supp. 233, which denied a state prisoner's petition for a writ of habeas corpus, the essential question presented is whether the district court correctly rejected petitioner's claim that he was denied his Sixth Amendment right to the effective assistance of counsel as a result of his attorney's joint representation of petitioner and two co-defendants at their state court trial which resulted in the conviction of petitioner of second degree arson. We affirm.

I.

In July 1973 petitioner George Kaplan, together with Jerry Gomberg and Martin Hodas, was indicted by a New York County Grand Jury of the crimes of second degree arson and criminal mischief for their participation in setting fires at two massage parlors in the Times Square area—the Palace and the French Model Studio—on May 10, 1972 and July 25, 1972, respectively. The two burned massage parlors were in competition with the Geisha House, another massage parlor in the same area which allegedly was owned by petitioner and his co-defendants. The motive for the fires, according to the evidence at the state trial, was the extreme disturbance on the part of the three defendants with the fact that the two competing massage parlors were undercut-ting the prices charged by the Geisha House.

On December 20, 1973, after a five day jury trial in the New York County Supreme Court before Justice Richard G. Denzer, Kaplan and Gomberg were convicted of two counts of second degree arson. Hodas was acquitted. On February 14, 1974 Kaplan and Gomberg filed a post-trial motion to set aside their convictions on the grounds, among others, that there had been a conflict of interest resulting from their attorney representing them, as well as the co-defendant Hodas, at trial. Following an extensive evidentiary hearing on this motion on February 28, 1974, Justice Denzer denied the motion on April 19, 1974. On the same day sentence was imposed on both defendants. Kaplan was sentenced to an indeterminate term of imprisonment not to exceed seven years.

On December 3, 1974 the Appellate Division unanimously affirmed both convictions. *People v. Gomberg*, 46 A.D.2d 850, 362 N.Y. S.2d 832 (1st Dept. 1974) (mem.); *People v. Kaplan*, 46 A.D.2d 850, 362 N.Y.S.2d 833 (1st Dept. 1974) (mem.). The New York Court of Appeals on December 29, 1975, in a comprehensive opinion by Judge Jasen, also unanimously affirmed both convictions. *People v. Gomberg and Kaplan*, 38 N.Y.2d 307, 342 N.E.2d 550, 379 N.Y.S.2d 769 (1975). An application for a stay was denied by Mr. Justice Marshall of the United States Supreme Court. No further review was sought in the Supreme Court.

Having exhausted his state remedies,[1] Kaplan filed the instant petition for a writ

---

* Hon. John F. Dooling, Senior United States District Judge, Eastern District of New York, sitting by designation.

1. As required by 28 U.S.C. § 2254(b) and (c) (1970), *Picard v. Connor*, 404 U.S. 270, 276 (1971), and the settled law of this Circuit, e.g., *Wilson v. Fogg*, 571 F.2d 91, 92–95 (2 Cir. 1978); *Cameron v. Fastoff*, 543 F.2d 971, 976–78 (2 Cir. 1976); *United States ex rel. Lunz v. Henderson*, 533 F.2d 1322, 1324 & n.3 (2 Cir. 1976); *United States ex rel. Johnson v. Vincent*, 507 F.2d 1309, 1311–13 (2 Cir. 1974); *Ralls v. Manson*, 503 F.2d 491, 493–94 (2 Cir. 1974); *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991 (2 Cir. 1974); *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121, 1123–25 (2 Cir.), *cert. denied*, 409 U.S. 1045 (1972); *United States ex rel. Wissenfeld v. Wilkins*, 281 F.2d 707, 710–12 (2 Cir. 1960).

We note that the New York Court of Appeals ruled on Kaplan's right "in a criminal proceeding to the assistance of counsel [as] guaranteed by the Federal and State Constitutions, as well as by State statute. (U.S.Const., 6th Amdt.; N.Y.Const., art. I, § 6; CPL 210.15, subd. 2.)" It is only the exhaustion of state remedies with respect to the *federal constitutional claim* with which we are concerned.

of habeas corpus in the Southern District of New York on June 1, 1976, from the denial of which by Judge Goettel in a well reasoned opinion filed January 6, 1977 the instant appeal has been taken.[2]

## II.

In view of the adequate statements of the facts in the opinions of the New York Court of Appeals and of the district court below with which we assume familiarity, we shall summarize here only those facts and prior proceedings necessary to an understanding of our rulings below on petitioner's claim of denial of effective assistance of counsel.

Turning first to the state court proceedings prior to trial, Justice Denzer conducted a hearing to determine if joint representation would create a potential conflict of interest prejudicial to any of the defendants. In the presence of defense counsel and the assistant district attorney, the judge addressed the three defendants to determine if they viewed their defense "as being in conflict or that there might be a conflict of interest with respect to any attorney that represents all three of you." When asked if he wished to change lawyers, Hodas replied that he wanted Kassner to continue to represent him. Gomberg at first appeared not to understand what the judge was getting at, stating that it might be "better for us to get another lawyer."

At that point the prosecutor stated that in his view the defendants were attempting further to stall the trial which already had been delayed for several months. Defense counsel Detsky then informed the judge, in the presence of the three defendants, that he had discussed the problem with his clients several days earlier and that all three had stated that they "had confidence in our firm [Kassner & Detsky] to handle it." The judge then specifically asked Detsky, in the presence of the three defendants, whether "[t]he way the situation stands is that you advised them of this and they told you they didn't want to hire other counsel?" Detsky replied that the judge's understanding was correct. After further discussion, the judge concluded by stating that the trial would proceed but that the defendants were at liberty to bring other counsel into the case at any time if they felt that there was a conflict. Throughout this entire proceeding the judge addressed all three defendants. Kaplan remained silent throughout.

After reviewing this pre-trial inquiry by the trial judge, the New York Court of Appeals concluded:

"We hold that the Trial Judge's inquiry of appellants and their counsel as to possible conflict of interest in this case was more than sufficient to protect the appellants' right to effective assistance of counsel. Although Gomberg initially ex-

---

Finally, on exhaustion of state remedies, we note that the district court below disposed of this issue as follows:

"Petitioner alleges that he has exhausted his state remedies, as required by 28 U.S.C. § 2254. Respondent does not challenge this contention." 444 F.Supp. at 233.

On a matter of such critical importance where neither the district court nor the court of appeals should accept a stipulation without an independent examination of the records, we suggest to the district judges that it would be better practice, and vastly more helpful to us, to make a specific finding *whether* state remedies have or have not been exhausted *based on the relevant state records*—usually the briefs or opinions in the Appellate Division and the New York Court of Appeals (on a habeas petition by a New York state prisoner). Indeed, substantial appellate time can be saved by the

simple device of making part of the district court record the relevant portions of the state court briefs and opinions that bear on the issue of exhaustion of state remedies. See, e.g., *United States ex rel. Lunz v. Henderson, supra,* 533 F.2d at 1324 & n.3.

2. Once again, this is a case in which no *judgment* was ever entered although clearly required by the rules as a basis for an appeal such as the instant one. We again renew our criticism of such practice. See *Duckett v. Silberman,* 568 F.2d 1020, 1023 n.1 (2 Cir. 1978); *Mallis v. Federal Deposit Ins. Corp.,* 568 F.2d 824, 827 n.4 (2 Cir. 1977), *cert. dismissed,* —— U.S. —— (1978).

Unless this sloppy practice is brought to a sharp halt by counsel and the district court clerks, we shall be compelled to resort to sterner measures.

pressed some misgivings, at the end of the proceedings all of the defendants were made aware of the possible conflict and acquiesced in the continuation of the Kassner & Detsky representation. The court took added precaution to advise the defendants that if at some later stage of the trial a conflict arose, the court would permit other counsel to enter the case. The defendants, intelligent and perceptive businessmen, never complained thereafter. They should not be permitted to complain now." 38 N.Y.2d at 315, 379 N.Y.S.2d at 776.

At the trial itself which began on December 12, 1973 the state's case relied heavily on the testimony of three employees of the Geisha House (paid accomplices) who had been ordered by Kaplan and his co-defendants to start the fires, and did so. The state also called a former associate of the defendants, Nicholas Valentine, who owned one of the competing massage parlors. Valentine, whose testimony was offered to corroborate that of the three accomplices, testified that on two occasions the defendants had threatened him. One such occasion was immediately after the first massage parlor had been burned when the defendants warned him that if he did not raise his prices his massage parlor would be next. It was.

The defense case consisted chiefly of vigorous cross-examination of the state's witnesses. The only witnesses called by the defendants were their attorney, Kassner; an accountant for several of Hodas' corporations, Herbert Levin; and Hodas, the only defendant who testified and the only one who was acquitted. Hodas testified, among other things, that he was merely a landlord of the Geisha House and therefore had no motive to set fire to competing massage parlors.

Kaplan's claim of denial of effective assistance of counsel because of the joint representation of the three defendants by the same attorney, Kassner, was first raised in his post-trial motion before Justice Denzer in the New York County Supreme Court. Substantially the same claim has now been rejected by three state courts and by the district court. For the reasons which follow, we also hold that the claim is without merit.

### III.

Upon this record of the facts and prior proceedings, the applicable law is simple and straightforward. It involves two essential questions. First, was Kaplan *prejudiced* by the joint representation of himself and his two co-defendants by the same attorney? Second, did he *consent* to such joint representation? These are the two questions which the New York Court of Appeals and the district court fully and carefully examined before concluding that Kaplan was not denied the effective assistance of counsel. We agree.

### (A) *Prejudice*

As Judge Mulligan well stated in *United States v. Carrigan*, 543 F.2d 1053, 1055 (2 Cir. 1976):

"The mere representation of two or more defendants by a single attorney does not automatically give rise to a constitutional deprivation of counsel. It is settled in this Circuit that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel."

*Accord, United States v. Mari*, 526 F.2d 117, 119 (2 Cir. 1975); *United States v. Vowteras*, 500 F.2d 1210, 1211 (2 Cir.), *cert. denied*, 419 U.S. 1069 (1974); *United States v. Wisniewski*, 478 F.2d 274, 281 (2 Cir. 1973); *United States v. Lovano*, 420 F.2d 769, 773 (2 Cir.), *cert. denied*, 397 U.S. 1071 (1970).

In short, as the New York Court of Appeals pointed out in the instant case, 38 N.Y.2d at 312, 379 N.Y.S.2d at 773, "the joint representation of defendants is not per se a denial of the effective assistance of counsel", citing *People v. Gonzalez*, 30 N.Y.2d 28, 34, 280 N.E.2d 882, 885, 330 N.Y.S.2d 54, 59, *cert. denied*, 409 U.S. 859 (1972). Nor has our Court ever subscribed

to such a per se rule, and we emphatically reject it here.

■ Kaplan's claim of prejudice centers chiefly on the asserted conflict which he says arose because his co-defendant Hodas testified that as landlord he lacked the motive to set the fires. Kaplan contends that defense counsel's emphasis on Hodas' lack of motive in turn emphasized that he and his co-defendant Gomberg *did* have a motive. While it is true that Hodas did present a separate defense which was unavailable to Kaplan, it does not follow that the positions of the three defendants necessarily were in conflict. Hodas did not attempt to place the blame for the arson on Kaplan. Nor did his lack of motive argument conflict with Kaplan's defense. The prosecution charged uniform participation by each defendant.[3] Thus they all had a common interest in attacking the credibility of the state's witnesses. In the course of emphasizing Hodas' lack of motive, defense counsel sought to undermine the testimony of the state's witnesses that Hodas had participated. To the extent that this impugned the credibility of the state's witnesses, it aided in the defense of Kaplan and Gomberg. Kaplan's claim of prejudice is grounded on speculation as to what the jury thought. It fails to show any "specific instance of prejudice" or any "real conflict of interest". *United States v. Carrigan, supra*, 543 F.2d at 1055.

Kaplan also urges that he was prejudiced by his attorney's failure to call him as a defense witness, although Hodas did testify. True, joint representation does present problems when one of several defendants takes the stand. *Morgan v. United States*, 396 F.2d 110, 114 (2 Cir. 1968).[4] As stated above, however, Hodas' testimony did not conflict in any way with Kaplan's defense. Nor is it clear that Kaplan's testimony would have added anything new to the defense. Moreover, if Kaplan had testified, he would have been subject to cross-examination on his criminal record. Hodas had no prior criminal record, whereas both Kaplan and Gomberg did. The decision not to call Kaplan was a matter of sound trial tactics. *United States v. Garguilo*, 324 F.2d 795, 797 (2 Cir. 1963) (Kaufman, *J.*).[5]

We hold that Kaplan was not prejudiced by the joint representation of himself and his two co-defendants by the same attorney.[6]

---

**3.** As the district court below pointed out, 444 F.Supp. at 237:

> "During a post-conviction hearing, Justice Denzer found that there was no conflict of interest among the defenses presented at trial for the three co-defendants. In fact, he found that there was a 'community of interest' among the defendants in that the evidence was consistent 'in indicating the equal responsibility of all three men.'"

**4.** In view of Kaplan's heavy reliance upon our decision in *Morgan*, it is worth noting what was flushed out on remand, *Morgan v. United States*, 295 F.Supp. 967 (D.Conn.1968), in response to this Court's direction to the district court to determine whether "Morgan knowingly accepted whatever risks were involved in having both defenses presented by the same attorney." 396 F.2d at 112. The district court held on remand:

> "In requesting the Court to appoint Turk to represent him, Morgan in effect placed himself in a position comparable to that of an individual who retains joint counsel with a co-defendant from the inception of the proceedings. In the latter situation, as in the case at bar, the choice of the individual

should not be disturbed, absent facts which might call to the Court's attention the individual's inability to make a free choice." 295 F.Supp. at 971.

**5.** With 20–20 hindsight, Kaplan also urges other instances of alleged prejudice from the joint representation during the trial, e.g., emphasis in cross-examination, failure to interpose objections, failure to call a witness named Bayarsky, requests to charge and summation. We have carefully considered all instances of alleged prejudice asserted by Kaplan and we find them to be without merit.

**6.** This might well end our inquiry. Having held on the basis of the trial record as well as the record of the pre-trial inquiry that there was no specific instance of potential or actual prejudice or any real conflict of interest, under the law of this Circuit it is unnecessary for us to reach the question of whether Kaplan consented to the joint representation. In view of the earnestness with which his able counsel on appeal urges the claim of lack of consent, we shall rule on the question, as did the New York Court of Appeals and the district court below.

## (B) Consent

We come finally to the question whether Kaplan consented to the joint representation.

At the outset we note that, although counsel have cast the question as one of *waiver*, we believe that this "is not truly a case of waiver of a constitutional right; it is a decision to assert one constitutional right instead of another." *United States v. Bubar*, 567 F.2d 192, 203 n. 18 (2 Cir.), *cert. denied*, 434 U.S. 872 (1977), quoting from *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 133–34 (2 Cir. 1975) (Feinberg, *J.*), *cert. denied*, 426 U.S. 937 (1976). See *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 756 n. 8 (2 Cir. 1975). Upon the record before us we believe that the question presented is not whether Kaplan *waived* his constitutional right to the effective assistance of counsel, but more accurately whether he *asserted* his constitutional right to be represented by counsel of his own choice—in short, to be represented jointly by counsel who also represented his co-defendants.

■ We have summarized above, p. 711 *supra*, the trial judge's pre-trial inquiry on the issue of a potential conflict of interest arising from joint representation—an inquiry which the New York Court of Appeals held was "more than sufficient to protect the appellants' right to effective assistance of counsel." 38 N.Y.2d at 315, 379 N.Y.S.2d at 776. Kaplan nevertheless contends that this inquiry was insufficient to impose the burden of proof on him [7] or to establish waiver. He argues that the trial judge was obliged to conduct a personal inquiry of each defendant and to obtain from each his express consent on the record to joint representation.

■ Upon the facts of this case, we hold that the trial judge's failure to address each defendant personally and to elicit a response from each does not preclude a finding of consent to joint representation.[8] The evidence shows that Kaplan consented to joint representation at a meeting with counsel prior to trial. At the pre-trial inquiry he heard defense counsel report his consent. He did not object. He was warned specifically about a possible conflict by the trial judge. He was offered the opportunity to obtain separate counsel. At

7. The defendant bears the burden of showing prejudice where prior to trial the court advised him of the possibility of a conflict and ascertained his willingness to proceed without separate counsel; otherwise the state must show lack of prejudice. *United States v. Carrigan, supra*, 543 F.2d at 1056; see also *United States v. Foster*, 469 F.2d 1, 4–5 (1 Cir. 1972).

8. Our prior decisions do not require that the trial judge elicit express consent on the record. In *United States v. Sheiner*, 410 F.2d 337, 341–43 (2 Cir. 1969), the trial judge explained the potential for conflict which might arise from joint representation. As here, however, the defendant did not explicitly consent to joint representation. We found the actual conflict and possible prejudice "to be so minimal as to warrant affirmance even in the absence of . . . explicit acquiescence in joint representation." *Id.* at 343.

In both *United States v. DeBerry*, 487 F.2d 448 (2 Cir. 1973), and *United States v. Carrigan, supra*, we found the inquiries by the district court to have been inadequate. In *DeBerry*, however, the conflict was discussed initially only on the second day of trial and then only between the attorneys. 487 F.2d 453. On the facts therefore it was unnecessary for us to reach the question of whether an express response from a defendant was necessary to a finding of consent. In *Carrigan*, moreover, the trial judge made no inquiry whatsoever as to whether joint representation would prejudice the defendants. 543 F.2d at 1057.

Kaplan's reliance on *United States v. Mari*, 526 F.2d 117 (2 Cir. 1975), and *Abraham v. United States*, 549 F.2d 236 (2 Cir. 1977), as support for his claim that his silence during the pre-trial inquiry precludes a finding of waiver, is misplaced. Although in both cases we held that the inquiry by the district court constituted a sufficient basis for a finding of waiver, we had no occasion to rule that individual responses from the individual defendants were necessary to such a finding.

Recently in *United States v. Donahue*, 560 F.2d 1039 (1 Cir. 1977), the First Circuit held that a pre-trial inquiry was insufficient because the magistrate did not explain the risks involved in joint representation even after the defendant said he did not fully understand the problem. Moreover, the magistrate did not inform the defendant that he was entitled to separate counsel if he so desired. That is a far cry from the facts of the instant case. ·

no time during the pre-trial inquiry or during the trial did he object to joint representation.

We agree with the observation of the New York Court of Appeals in the instant case that "[i]t is appropriate, under such circumstances, for the court to place great weight upon counsel's representation that there is no conflict in his joint representation. Similarly, the court may rely upon counsel's assurances that he fully discussed the potentiality of conflict with his clients and received their continued approbation." 38 N.Y.2d at 314, 379 N.Y.S.2d at 775, citing *United States v. Armone,* 363 F.2d 385, 406 (2 Cir.), *cert. denied,* 385 U.S. 957 (1966).

Under this branch of the inquiry as to whether Kaplan was denied the effective assistance of counsel, we conclude under the circumstances of this case that he consented to the joint representation.[9] Here again we agree with the conclusion reached by the New York Court of Appeals:

> "The trial court, by its careful and measured response to the conflict of interest issue, more than fulfilled its obligation to make a reasonable inquiry of possible conflict. The defendants, after being alerted to the existence of a possible conflict of interest and given the opportunity to retain separate counsel, consented to continued representation by Kassner & Detsky. By his consent, which was knowingly and intelligently made, defendant Kaplan, as well as defendant Gomberg, waived any claim of possible prejudice resulting from the joint representation." 38 N.Y.2d at 316, 379 N.Y. S.2d at 777.

We have carefully considered Kaplan's other claims of error and find them to be without merit.[10]

Affirmed.

MANSFIELD, Circuit Judge (concurring):

Although we have not held that joint representation of two defendants in a criminal case amounts to a per se denial of effective assistance of counsel, I view it as something to be frowned upon because of its potential for conflict of interest on the counsel's part. The rules we have established in a long line of cases raising this constantly recurring problem should therefore be strictly construed. Applying them here, I find myself able to concur solely because of the absence of sufficient particularized prejudice from the joint representation of Kaplan and two co-defendants to warrant a finding that he was unconstitutionally denied his right to effective assistance of counsel under the Sixth Amendment.

Although Hodas' successful effort at trial to disassociate himself from Kaplan and Gomberg by showing his lack of the motive they possessed and by taking the witness stand, which they did not, might have hurt

---

9. Our concurring colleague's separate opinion, of course, should be read with the distinction in mind between our roles (a) in exercising our supervisory power on direct appeals in criminal cases, which the instant case is *not,* and (b) in exercising, *as we do here,* our far more limited power of reviewing on federal habeas corpus a unanimous decision of the New York Court of Appeals to determine whether error of constitutional dimensions has been committed.

This distinction is reflected in Judge Mansfield's reliance, in his concurring opinion, solely upon cases which arose under the federal courts' *supervisory* power on direct appeals in criminal cases; none of the cases relied upon by Judge Mansfield involved our limited power of habeas corpus review.

10. For example, Kaplan claims that the district court should have granted him a hearing on his habeas petition to determine if he was competent to understand the conflict problem and to waive his right to separate counsel. We disagree. The district court had before it the entire transcript of proceedings in the state trial court, as well as the state appellate court decisions. This record fully set forth the trial judge's explanation of the conflict issue, as well as Kaplan's prior business ventures and past court experience. This provided an adequate basis for the district court's finding that Kaplan was competent to understand the risks inherent in joint representation and to waive his right to separate counsel. See 28 U.S.C. § 2254(d) (1970).

Kaplan in the jury's eyes, the possible harm is speculative at best and there is no showing that if Kaplan had been separately represented his counsel would have improved his tactical trial position or chosen to expose his criminal record by putting him on the witness stand. Thus, with or without separate counsel, the potential prejudice to Kaplan arising out of Hodas' separate defense remained substantially the same.

When it comes to the questions of whether Kaplan consented to joint representation and whether the trial judge followed the proper procedure in resolving that issue, I do not share the views expressed by the majority opinion. While we have occasionally relied upon defense counsel's statement as the basis for permitting joint representation, the preferred procedure is for the trial court, before permitting such representation, to address the defendants personally and elicit from them responses clearly indicating their understanding of the risks involved and their desire to be jointly represented. *Abraham v. United States,* 549 F.2d 236, 239 (2d Cir. 1977) ("defendant should be given the opportunity to express his views"); *United States v. Mari,* 526 F.2d 117, 118 (2d Cir. 1975), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976) (defendants "replied in the affirmative" that they understood possibility of conflict and wanted to be jointly represented). The personal responses of the defendants were elicited in *United States v. Vowteras,* 500 F.2d 1210, 1211 (2d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *United States v. Wisniewski,* 478 F.2d 274 (2d Cir. 1973); and *United States v. Sheiner,* 410 F.2d 337 (2d Cir.), *cert. denied,* 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969).

Here, in contrast, the trial judge did not obtain a personal response from Kaplan. Moreover, joint representation of the three defendants was permitted after one, Gomberg, repeatedly stated to the trial judge that he would like to confer with another lawyer and after his counsel had stated to the court that "There might be a conflict"; that he had unsuccessfully moved for a severance of Hodas on that ground; and that he had suggested to them (Gomberg and Kaplan) that they should get a different lawyer than counsel representing Hodas but that they had decided to continue with him as their joint attorney. In the verbal melee that followed in the courtroom, Kaplan does not appear to have been accorded any opportunity to express his views or state whether he wished to be represented by the same attorney who represented the other two defendants. Nor does the background of Kaplan, a person with a sixth grade education, suggest that he understood the import of counsel's colloquy with the court or intelligently concurred in it.

Under all of these circumstances I cannot join in the conclusion that the trial judge's inquiry measured up to the standards we have established or that Kaplan's conviction should be affirmed on the ground that he knowingly and intelligently consented to continued joint representation. However, even if we assume that because of the inadequacy of the state judge's inquiry the burden was on the state to show lack of prejudice, see *United States v. Carrigan,* 543 F.2d 1053, 1056 (2d Cir. 1976); *United States v. DeBerry,* 487 F.2d 448, 453–54 n.6 (2d Cir. 1973), I believe that burden was sustained in the present case. Absent a claim or indication of some specific instance of prejudice attributable to the joint representation, the state cannot be required to go any further in proving a negative.